Rebecca GLIATTA, Plaintiff,

v.

TECTUM INC., et al., Defendants.

No. 2:01–CV–199.

United States District Court,
S.D. Ohio,
Eastern Division.

July 8, 2002.

D. Patrick Kasson, Gwenn Snyder Karr, Reminger & Reminger Co., L.P.A., Columbus, OH, for plaintiff.

Paul J. Corrado, Michele Smolin, Anthony J. DiVenere, McDonald Hopkins Burke & Haber Co., LPA, Cleveland, OH, for Tectum, Inc., defendant.

Christopher Richard Meyer, Reese Pyle Drake & Meyer, Newark, OH, James M.L. Ferber, Margaret C. Bettendorf, Masarath N. Haque, Littler Mendelson, PC, Columbus, OH, for Doug Tocco, defendant.

James M.L. Ferber, Margaret C. Bettendorf, Masarath N. Haque, Littler Mendelson, PC, Columbus, OH, for Commercial Ceiling, defendant.

## OPINION AND ORDER

SARGUS, District Judge.

This matter is before the Court for consideration of several motions. For the reasons that follow, Defendant Tectum's Motion for Summary Judgment (Doc. # 82) is granted; Defendant Tectum's Motion to Dismiss Plaintiff's counterclaims[1] (Doc. # 74) is granted in part and denied in part; Plaintiff's Motion for Partial Summary Judgment (Doc. # 83) is denied; Plaintiff's Motion for Leave to Amend her counterclaim (Doc. # 126) is granted; Plaintiff's Motions for Leave to Dismiss her claims against Defendants Tocco and Commercial Ceiling without prejudice (Doc. # 56 and # 57) are granted, with conditions; Defendants Tocco and Commercial Ceiling's Motion for Summary Judgment (Doc. # 60) is denied as moot; Plaintiff's Motion to Dismiss her retaliation counterclaim (Doc. # 87) is denied as moot; Tectum's Motion for Leave to file a Surreply *instanter* (Doc. # 111) is granted; and Tectum's Motion to Continue the Trial Date (Doc. # 115) is granted.

### I.

Plaintiff, Rebecca Gliatta ["Plaintiff"], brings this action asserting violations of her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000, *et seq.* and Ohio Revised Code Chapter 4112. The Defendants are Plaintiff's former employer, Tectum, Inc. ["Tectum"], as well as Commercial Ceiling and its owner, Doug Tocco. Plaintiff claims that Tocco sexually harassed her in violation of federal and

---

1. Plaintiff refers to the claims she filed in response to the Defendant Tectum's claim against her as "counterclaims." While this is procedurally incorrect, in light of the parties' briefing and for the sake of clarity, the Court will continue to refer to the Plaintiff's responsive claims as counterclaims.

**998**

state law. Plaintiff also claims that she was unlawfully retaliated against by her former employer. In addition to her federal claims, Plaintiff asserts claims under Ohio law for intentional infliction of emotional distress, invasion of privacy and discharge in violation of public policy. Defendant Tectum brings a counterclaim against Plaintiff for tortious interference with business relationship. In response to this counterclaim, Plaintiff brings a second retaliation claim under Title VII and state law, as well as state law claims for abuse of process and spoliation of evidence. The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1367.

Plaintiff was employed by Tectum as a Marketing Manager from June 1992 to December 1999. (Compl.¶ 9). On December 3, 1999 Tectum held a training seminar for its distributors in Columbus, Ohio; Tocco attended the seminar. (Id. at ¶ 10). During the course of the seminar and at a local sports bar afterwards, Tocco made sexually explicit comments directed at Plaintiff in the presence of Tectum management level employees. (Id. at ¶ 11). In particular, Plaintiff claims that (1) Tocco asked Plaintiff to remove her blazer to see what was underneath; (2) Tocco presented an onion ring to Plaintiff and suggested that it was a "cock ring"; (3) Tocco asked Plaintiff if she and her husband, who is a police officer, had sex in the back of his police cruiser and if her husband used his nightstick during sex. (Pl.Dep. at 81, 83, 91). Plaintiff's immediate supervisor Ken Fistrovich was present at the seminar and at the sports bar. (Pl.Aff.¶ 15). Plaintiff contends that Fistrovich did nothing to intervene. (Id.) Fistrovich claims, however, that after witnessing the comments at the sports bar he told Tocco to refrain from such behavior. (Fistrovich Aff. ¶ 6).

On December 6, 1999, the next business day, Plaintiff reported Tocco's sexually harassing comments to Tectum Senior Vice President Sharon Young, after informing Fistrovich that she intended to do so. (Plaintiff Dep. at 159–60). Immediately after speaking to Plaintiff, Young related the incident to Tectum President Michael Massarro and Supervisor Wayne Chester. (Young Dep. at 77–80). Shortly after the incident was first reported, Chester, with the support of other Tectum supervisors, wrote a letter to Tocco condemning his behavior and forbidding him from visiting Tectum or attending future Tectum events. (Chester Dep. at 78; Plaintiff Dep. at 174).

Prior to these incidents, Plaintiff was responsible for managing Tectum's sales leads concerning potential customer inquiries regarding the acoustical tile manufactured and sold by the company. (Pl.Dep. at 203–215, 218). "Sales leads" consist of "bounce back" cards and magazine inquiries, as well as lists of address labels in sealed envelopes. (Fistrovich Dep. at 94–98). Managing the leads consists of responding to the customer inquiries and entering them into a special database designed to track leads. (Pl.Dep. at 203–215, 218). On January 22, 1999, Plaintiff's supervisor, Chester, voiced concerns over Plaintiff's "lack of initiative and sense of urgency" relating to the management of the leads in a performance review. (Fistrovich Dep. at 220–21). On September 7, 1999, Fistrovich sent Plaintiff a memo insisting that she tend to the leads within twenty-four hours. (Pl.Dep. at 216–19).

From December 8, 1999, to December 10, 1999, Plaintiff was absent from the office. (Pl.Dep. at 243). On December 9, 1999, while looking for a file in Plaintiff's desk, Fistrovich found several bounce back cards and unopened envelopes containing lists of leads dating back several months which had not been entered into Tectum's

database, nor had the customers been contacted. (Fistrovich Dep. at 30–34). Plaintiff claims that fewer than one-hundred (100) leads had been neglected. (Pl. Aff.¶ 8). Tectum claims that the neglected leads and bounce back cards numbered approximately seventeen-hundred (1700); Tectum has produced unrefuted evidence of four hundred thirty-five (435) unanswered leads and bounce back cards. (Defendant's Reply Brief in Support of Motion for Summary Judgment, exhibit B and C).

On December 13, 1999, Plaintiff asked to be transferred out of the Marketing Department primarily because of the way Fistrovich handled the Doug Tocco situation. (Pl.Aff.¶ 22) On December 17, 1999, Tectum terminated Plaintiff's employment. (Id. at ¶ 13). Plaintiff claims that her termination was in retaliation for her complaint of sexual harassment and transfer request. (Compl., ¶ 19–22). Tectum claims that Plaintiff was terminated for failing to adequately manage the leads and bounce back cards, and for violating the policy of not discussing terms of bonus paychecks with other employees. (Fistrovich Dep. at 77–83; Exhibit 10 attached to Motion for Summary Judgment). With respect to the latter, it is undisputed that Tectum has a company policy that prohibits the discussion of salaries and bonus compensation among employees. It is further undisputed that Plaintiff violated the policy.

Plaintiff filed this case alleging sexual harassment and retaliation in violation of Title VII and state law. Plaintiff also asserts claims for intentional infliction of emotional distress, invasion of privacy and discharge in violation of public policy. In response to Plaintiff's claims, Tectum brings a counterclaim for tortious interference with business relationship. In particular, Tectum claims that Plaintiff's alleged failure to adequately manage the leads and bounce back cards was willful and intentional. Tectum claims that, as a result of Plaintiff's failure, Tectum's sales leads grew "stale and therefore became worthless, all of which caused Tectum to sustain financial injuries and damages such as lost profits, marketing costs, and the loss of prompt pay discounts [as well as loss of] reputation, business relationships and good will." (Am. Answer and Counterclaim at ¶ 7). In response to this claim, Plaintiff asserts claims for retaliation under Title VII, abuse of process and spoliation of evidence.

## II.

### *Defendant Tectum's Motion for Summary Judgment*

### Standard of Review

The procedure for granting summary judgment is set forth in Fed.R.Civ.P. 56(c), which provides in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to summary judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and

on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Matsushita Electric Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The Sixth Circuit Court of Appeals has recognized that *Liberty Lobby, Celotex,* and *Matsushita* have effected "a decided change in summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment". *Id.* at 1479.

In addition, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Id.* (quoting *Liberty Lobby,* 477 U.S. at 257, 106 S.Ct. 2505). The nonmoving party must adduce more than a mere scintilla of evidence in order to overcome the summary judgment motion. *Id.* It is not sufficient for the nonmoving party to merely "show that there is some metaphysical doubt as to the material fact." *Id.* That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.

### Application

### A. Plaintiff's Claims under Title VII and Ohio Revised Code § 4112.02

Before an aggrieved party may file suit in federal court under Title VII, he or she must exhaust all available administrative remedies. If a claimant chooses to file a charge affidavit with the E.E.O.C., Title VII mandates that a right to sue notice be received by the claimant before a civil action may be brought.[2] Accordingly, Plaintiff's claims under Title VII must be filed within 90 days of receipt of a right to sue letter from the EEOC. 42 U.S.C. § 2000e–5(f)(1). In the instant case, it is not contested that Plaintiff's sexual harassment claim and retaliation claim under Title VII were brought within 90 days of the issuance by E.E.O.C. of the Notice of Right to Sue.

### 1. *Sexual Harassment*

█ Plaintiff claims that Tocco, an attendee of an event held by Tectum, sexually harassed her and that Tectum thereby discriminated against her based on her sex. Plaintiff's sexual harassment claim arises from the proscription in Title VII that "it shall be an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin ..." 42 U.S.C. § 2000e–2(a)(1). A violation of Title VII may be predicated on either two types of sexual harassment: (1) harassment that creates an offensive or hostile environment; or (2) quid pro quo harassment, in which a supervisor demands sexual favors in exchange for employment benefits. *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). In the instant suit, Plaintiff alleges a hostile work environment claim of sexual harassment.

---

**2.** Title VII provides that the EEOC shall notify the person aggrieved of his or her right to sue "and [that] within 90 days after the filing of such notice, a civil action may be brought." 42 U.S. § 2003–5(f)(1).

Similarly, O.R.C. § 4112.02 states in pertinent part: "It shall be an unlawful employment discriminatory practice: (A) For any employer, because of the .... sex ... of any person, to discharge without just cause ... or otherwise to discriminate against that person with respect to hire, tenure, conditions, or privileges of employment ..." O.R.C. § 4112.02(A). The Ohio Supreme Court has held that federal case law interpreting Title VII is "generally applicable to cases involving alleged violations of R.C. Chapter 4112." *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civil Rights Commission,* 66 Ohio St.2d 192, 196, 421 N.E.2d 128 (1981). The Court will therefore apply the same analysis to the claims arising under Title VII as well as O.R.C. § 4112.02.

In order to establish a *prima facie* case of sex-based discrimination, Plaintiff bears the burden of producing probative evidence on each of the following elements: (1) she is a member of a protected class; (2) she was subjected to unwelcome sexual harassment in the form of sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature; (3) the charged harassment was based on her sex; (4) the harassment unreasonably interfered with her work performance and created a hostile or intimidating work environment; and (5) the existence of liability on the part of Tectum. *Fleenor v. Hewitt Soap Co.,* 81 F.3d 48, 49 (6th Cir.) *cert. denied,* 519 U.S. 863, 117 S.Ct. 170, 136 L.Ed.2d 112 (1996).

The Plaintiff, as a woman, is a member of a protected class. It is undisputed that she was subjected to unwelcome sexual harassment and that such harassment was based on her sex. In determining whether a hostile work environment exists, the Court must analyze both objective and subjective factors, i.e., the Court must assess whether the environment was both perceived as abusive by a reasonable person and actually perceived as abusive by Plaintiff. *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Plaintiff carries the burden of establishing that the workplace was "permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris,* 510 U.S. at 21, 114 S.Ct. 367, *quoting Meritor Savings Bank v. Vinson,* 477 U.S. 57, 61, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). In determining whether or not the harassing conduct was "sufficiently severe or pervasive" to constitute actionable sexual harassment, the Supreme Court has considered factors including the following: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. *Harris,* 510 U.S at 22–24, 114 S.Ct. 367.

The Sixth Circuit has held that rare or isolated incidents of sexual harassment rarely rise to the level of pervasiveness required to create an hostile work environment. *Morris v. Oldham Cty. Fiscal Court,* 201 F.3d 784 (6th Cir.2000); *Burnett v. Tyco Corp.,* 203 F.3d 980 (6th Cir.2000). When harassment reaches the point where it "alter[s] the conditions of [the victim's] employment and create[s] an abusive working environment," however, the harassment becomes actionable. *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), quoting *Henson v. Dundee,* 682 F.2d 897, 904 (11th Cir.1982). *See also Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998).

■■ For a single incident to constitute actionable harassment, the conduct must be particularly egregious. In this case, the single incident, according to Plaintiff, involved sexually explicit and insulting commentary made to Plaintiff in the presence of male co-workers. It cannot be said that there is no genuine issue of material fact on this question. On this basis, Tectum is not entitled to summary judgment.

■ It is undisputed, however, that Defendant Tocco is the owner and employee of Commercial Ceiling, Inc. and that at no time was he ever employed by Tectum. (Pl.Dep. at 22–27). Employers are liable for the actions of nonemployees only when they knew or should have known of the offensive behavior and failed to take immediate and appropriate action. 29 C.F.R. § 1604.11(e). In order to hold Tectum liable for Tocco's actions, Plaintiff must prove that Tectum knew or should have known of the harassment and failed to take appropriate action. *Magnuson v. Peak Technical Services,* 808 F.Supp. 500 (E.D.Va.,1992). In sexual harassment cases, an employer can obtain knowledge of harassment in two ways. *See Anderson v. Deluxe Homes of PA, Inc.,* 131 F.Supp.2d 637 (M.D.Pa.2001). The first method is actual notice, where the employee has reported the harassing conduct. *Id.* The second method is constructive notice, where the plaintiff proves that the sexual harassment is so pervasive that the employer should have known of the existence. *Id.*

■ In this case, Tectum was given actual notice of the conduct by Tocco the day after it occurred. The alleged conduct took place on a Friday; the following Monday the conduct was reported to the Sharon Young, the Senior Vice President. That same day a letter was drafted and sent to Tocco, prohibiting him from visiting Tectum or attending future events sponsored by Tectum. (Pl.Dep. at 174). The letter sent to Tocco ensured that Plaintiff would not come in contact again with Tocco. Based on this evidence, it is clear that Tectum took appropriate action in a timely fashion upon receiving actual notice of the harassment.

Plaintiff, however, points out that Fistrovich, her direct supervisor, was present when the harassment occurred at the Tectum sponsored seminar and at the sports bar afterward. (Plaintiff Aff., ¶ 18) Fistrovich admits that he witnessed Tocco's comments at the sports bar. Fistrovich avers that he told Tocco to refrain from such conduct. (Fistrovich Aff.). Plaintiff contends that she did not see Fistrovich say anything to Tocco. (Plaintiff Aff., ¶ 15; Williams Aff., ¶ 19). On this precise issue, there is a dispute of fact. Thus, for the purposes of resolving this motion only, the Court assumes that Fistrovich observed the harassing conduct, but did nothing at the time.

■ Despite this issue, it is undisputed that, on the next business day, Tectum took immediate action in response to Plaintiff's complaint. This factor is of critical importance in determining whether Tectum may be liable for Tocco's conduct. Employers are generally not liable for harassment by nonemployees outside the workplace. *Whitaker v. Carney,* 778 F.2d 216 (5th Cir.1985). This principle is particularly appropriate here where the employer took immediate action. The Court concludes that Defendant Tectum is entitled to summary judgment on Plaintiff's hostile work environment sexual harassment claim because the undisputed evidence demonstrates that Tectum did not create a hostile work environment and acted promptly to prevent a non-employee from sexually harassing Plaintiff.

## 2. Retaliation

■ Plaintiff also claims that she was fired in retaliation for complaining to Tectum management officials of Tocco's conduct. A plaintiff does not need to show that the behavior complained of was in fact sexual harassment, only she had a good faith belief that it was when she engaged in the protected activity. *Forman v. Small,* 271 F.3d 285 (D.C.Cir.2001). *See also Yerry v. Pizza Hut of Southeast Kansas,* 186 F.Supp.2d 178 (N.D.N.Y.2002); *Selenke v. Medical Imaging of Colorado,* 248 F.3d 1249 (10th Cir.2001). No evidence has been introduced suggesting that Plaintiff was not acting in good faith when she made her complaint with Tectum management and requested a transfer.

■ Section 705(a) of Title VII, 42 U.S.C. § 2000e–3(a), prohibits an employer from retaliating against an employee because she had previously filed a discrimination charge. To establish a *prima facie* case of retaliation, Plaintiff must present sufficient evidence on the following elements: (1) she engaged in a protected activity; (2) this exercise of protected rights was known to defendant; (3) the defendant thereafter took adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. *See Johnson v. United States Dep't of Health and Human Servs.,* 30 F.3d 45, 47 (6th Cir.1994); *Buck v. Fries and Fries, Inc.,* 953 F.Supp. 896, 907 (S.D.Ohio 1996). Once Plaintiff demonstrates a *prima facie* case of retaliation, the burden shifts to Defendant to articulate a legitimate non-discriminatory reason for its employment action. *Johnson,* 30 F.3d at 47. If Defendant offers a legitimate reason for its adverse employment action, the burden shifts back to Plaintiff to carry her overall burden of persuasion by showing that the proffered nondiscriminatory reasons are pretextual. *Wrenn v. Gould,* 808 F.2d 493, 501 (6th Cir.1987); *Evans v. Jay Instrument & Specialty Co.,* 889 F.Supp. 302, 309 (S.D.Ohio 1995).

■ An individual is protected if she opposes a discriminatory employment action or has made a charge, testified, assisted or participated in any investigation, proceeding, or hearing concerning discriminatory employment practices. 42 U.S.C.2000e–3a. Courts distinguish between different types of protected activities. *Booker v. Brown & Williamson Tobacco Co., Inc.,* 879 F.2d 1304, 1312–13 (6th Cir.1989). Activities such as filing an EEOC claim fall under the "participation" clause of Title VII. *Id.* Plaintiff's activity in this case falls under the "opposition" clause of Title VII because, as Tectum points out, she had not actually filed a complaint with the EEOC before she was fired. Although Title VII provides greater protection for "participation" than for "opposition" in retaliation cases, Plaintiff's grievance made with Tectum officers is protected activity.

■ Tectum was clearly aware of the complaint of sexual harassment made by the Plaintiff. Plaintiff was terminated approximately eleven days after she made her complaint and three days after she requested to be transferred to another department. It is undisputed that ultimate employment actions such as termination are considered adverse employment actions for the purposes of Title VII retaliation claims. *Mattern v. Eastman Kodak Co.,* 104 F.3d 702, 705 (5th Cir.1997).

■ In order to successfully establish a retaliation claim, Plaintiff must prove a causal connection between her complaint and her termination. The only evidence Plaintiff puts forth supporting a causal connection is the temporal relationship between her request for a transfer

and the date of her termination. A causal link may be proven through evidence that an adverse employment action came right after the employee engaged in a protected activity. *Canitia v. Yellow Freight System, Inc.,* 903 F.2d 1064 (6th Cir.1990). At this juncture, the Court concludes that Plaintiff has established a *prima facie* case of unlawful retaliation based solely on the temporal proximity of her discharge to her complaint of sexual harassment.

■ In response to Plaintiff's showing of a causal connection, Tectum offers evidence of legitimate business reasons for terminating her employment, *i.e.,* Plaintiff's alleged failure to adequately manage leads and bounce back cards; Plaintiff's alleged discussion of bonus checks with other employees against company policy; and Plaintiff's alleged derogatory statements about supervisors. (Exhibit 10 attached to Motion for Summary Judgment). The Court concludes that Defendant has responded to Plaintiff's *prima facie* showing by presenting evidence that it had a legitimate business justification for Plaintiff's discharge.

■ To rebut the Defendant's showing, Plaintiff must show pretext. To show that the proffered reasons are pretextual, Plaintiff must show that (1) the reasons offered had no basis in fact, (2) the reasons did not actually motivate the discharge, or (3) the reasons were insufficient to motivate discharge. *Manzer v. Diamond Shamrock Chemicals, Co.,* 29 F.3d 1078, 1084 (6th Cir.1994). *See also Maddox v. University of Tennessee,* 62 F.3d 843, 848 (6th Cir.1995).

■ The first type, that the reasons had no basis in fact, is proven by evidence tending to establish that the proffered bases for Plaintiff's termination simply are false. *Manzer,* 29 F.3d at 1084, citing *Anderson v. Baxter Healthcare,* 13 F.3d

1120, 1123–24 (7th Cir.1994). The second type, that the reasons did not actually motivate the discharge, is proven by "admit[ting] the factual basis underlying employer's proffered explanation and further admit[ting] that such conduct could motivate dismissal." *Manzer,* 29 F.3d at 1084. Once this is shown, the plaintiff may then attempt to show that the discriminatory motivation for termination is more likely the underlying reason than the employer's proffered one. *Id.* The third type, that the proffered reasons were insufficient to motivate discharge, requires that a plaintiff show that other employees, particularly those that did not engage in the protected activity, engaged in *substantially identical* conduct to that which the employer contends motivated the discharge. *Id.* (emphasis added). *See also Clayton v. Meijer, Inc.,* 281 F.3d 605 (6th Cir.2002) (holding that conduct of other employees must be similar in relevant aspects).

■ In order to establish that the employer's proffered reasons for termination are insufficient to motivate the discharge, Plaintiff must show that *all* the reasons offered by the employer are pretextual. *Rhodes v. Professional Transp., Inc.,* No. 00–2500, 2001 WL 125158 at *2 (7th Cir. Feb.9, 2001) (emphasis provided). *See also Ghosh v. Indiana Dept of Envtl. Mgmt.,* 192 F.3d 1087, 1091–92 (7th Cir. 1999); *Mills v. Health Care Serv. Corp.,* 171 F.3d 450, 459 (7th Cir.1999). As stated *supra,* Tectum contends that Plaintiff was dismissed because (1) she failed to properly manage the leads, (2) she failed to make weekly reports on the leads as requested by her supervisor, and (3) she made derogatory statements to other employees about supervisors Fistrovich and Chester without addressing her concerns with them first.

■ In response, Plaintiff contends that another employee, who did not file a

sexual harassment claim, failed to enter several hundred leads and was not disciplined. (Meade Aff. at ¶ 7). The exact number of leads which Plaintiff neglected is in question. Tectum, however, has provided evidence of at least 435 unentered leads. (Def. Reply, exhibits B and C). The number of leads which Plaintiff failed to enter greatly exceeds the number involving the co-worker. (Chester Aff. at ¶ 9). Furthermore, the leads neglected by Plaintiff dated back to February 1999; Plaintiff has offered no evidence that the leads neglected by the other employee dated back as far. (Id. at ¶ 10). In *Clayton*, the Sixth Circuit held that, while exact correlation is not necessary, there must be relevant similarity between the two situations to support a claim of disparate treatment. 281 F.3d at 611, citing *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000).

This Court concludes that the number and age of the neglected leads are the essential elements behind Plaintiff's termination. In the Court's view, the Plaintiff's situation and that of the other employee lack "relevant similarity." Thus, the Court concludes that Plaintiff has failed to establish that the Defendant's proffered reason for discharge was pretextual. In addition, Plaintiff comes forward with no evidence to overcome the Defendant's other proffered reasons for her discharge; *i.e.*, making derogatory statements about her supervisors and discussing bonus paychecks. In light of Plaintiff's failure, the Court concludes that Defendant Tectum is entitled to summary judgment on Plaintiff's retaliation claim.

### B. Plaintiff's State Law Claims

Plaintiff asserts claims for intentional infliction of emotional distress, invasion of privacy and discharge in violation of public policy. The Court notes that with respect to the first two claims, Plaintiff has not responded to Defendant's motion for summary judgment. As a result, the Court concludes that Defendant Tectum is entitled to summary judgment on these claims. Plaintiff has moved for summary judgment on her claim for discharge in violation of public policy, under Ohio law. Thus, the Court will only address the merits of this claim.

 In Ohio, a cause of action in tort exists for wrongful discharge in violation of public policy. Such a claim constitutes an exception to the doctrine of employment at will. *Greeley v. Miami Valley Maintenance Contractors, Inc.*, 49 Ohio St.3d 228, 551 N.E.2d 981 (1990); *Kulch v. Structural Fibers, Inc.*, 78 Ohio St.3d 134, 677 N.E.2d 308 (1997). The claim requires a showing of the following: the existence of a clear public policy; the circumstances surrounding the employee's dismissal jeopardize that public policy; the dismissal was motivated by conduct related to the public policy; and the employer lacked an overriding legitimate justification for the dismissal. *Painter v. Graley*, 70 Ohio St.3d 377, 384–85, 639 N.E.2d 51 (1994). With regard to the first element, "clear public policy" is not limited to that expressed in the form of a statute but, the public policy alleged to have been violated must be "of equally serious import as the violation of a statute." *Id.* at 384, 639 N.E.2d 51.

In this case, Plaintiff relies on the language of the National Labor Relations Act, 29 U.S.C. § 157, in support of her public policy claim. This provision states that employees have "the right to self-organize, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. Section 158(a)(1) makes it an unfair labor

practice for an employer to "interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in Section 157." 29 U.S.C. § 158(a)(1).

 Plaintiff alleges that because Tectum terminated her for discussing her bonus paychecks with other employees, Tectum violated her right to "engage in concerted activities" under § 157, and the public policy which the statute embodies.

The Court concludes that the language of § 157 does not establish a clear public policy applicable to the instant situation. While an employer clearly cannot violate the terms of the statute, Plaintiff's allegations regarding the discussions of bonus paychecks are simply too amorphous to come within any public policy which the statute allegedly covers. The NLRA does not prohibit an employer from directing workers not to discuss bonuses with co-workers, at least in circumstances where employees are not engaging, or deciding whether to engage, in collective bargaining or some other type of collective activities. Furthermore, there is no authority to support such a public policy tort in Ohio and this Court declines the invitation to so extend the cause of action. In sum, the Defendant's motion for summary judgment on the public policy tort claim is granted and the Plaintiff's motion is denied.

### Defendant Tectum's Motion to Dismiss

Tectum moves to dismiss Plaintiff's counterclaims[3] filed in response to its counterclaim against Plaintiff. In particular, Tectum seeks dismissal of Plaintiff's claims of retaliation under Title VII and Chapter 4112, abuse of process, and spoliation of evidence.

### Standard of Review

A motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) "should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). All well-pleaded allegations must be taken as true and be construed most favorably toward the nonmovant. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).; *Mayer v. Mylod*, 988 F.2d 635, 637 (6th Cir.1993). While a court may not grant a Rule 12(b)(6) motion based on disbelief of a complaint's factual allegations, *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir. 1990), the court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987). Consequently, a complaint will not be dismissed pursuant to Rule 12(b)(6) unless there is no law to support the claims made, the facts alleged are insufficient to state a claim, or there is an insurmountable bar on the face of the complaint.

If matter outside the pleadings "are presented to and not excluded by the court," Rule 12(b)(6) provides that the motion is to be treated as one for summary judgment under Rule 56 and "all parties shall be given reasonable opportunity to present all material pertinent to such motion by Rule 56." Fed.R.Civ.P. 12(b)(6).

### Application

#### A. Plaintiff's Retaliation Claim

In response to Defendant Tectum's counterclaim for tortious interference with business relationship, Plaintiff brings a claim for retaliation. Plaintiff alleges that if she "had not filed a discrimination/retali-

---

**3.** Again, as stated *supra,* the Court will refer to Plaintiff's responsive claims as "counter-

claims" for the sake of clarity, although the term is procedurally incorrect.

ation/employment law claim against Tectum, Tectum would never have brought this claim against Plaintiff." (Doc. # 72 at ¶ 2). Plaintiff further alleges that Tectum has filed its counterclaim to harass Plaintiff and to intimidate her into settling her claims for less then they are worth. (Id. at ¶¶ 9–11).

Defendant Tectum moves to dismiss this counterclaim first because Plaintiff has allegedly failed to exhaust her administrative remedies under Title VII. Plaintiff has, however, recently filed a Motion for Leave to Amend her counterclaim in light of her receipt on June 18, 2002 of a Notice of Right to Sue from the EEOC. (Exhibit A attached to Plaintiff's Motion). In light of this evidence, the Court concludes that to the extent Defendant seeks dismissal on the basis of exhaustion, the motion must be denied. Plaintiff's motion for leave to amend is granted.

Defendant also moves to dismiss Plaintiff's retaliation claim on the basis that Plaintiff could prove no set of facts that would entitle her to relief. In particular, Defendant asserts that Plaintiff cannot satisfy the adverse action requirement. Plaintiff disputes this assertion.

As stated *supra,* in order to state a claim for retaliation under Title VII, the Plaintiff must show that (1) she engaged in a protected activity; (2) the exercise of protected rights was known to the Defendant; (3) the Defendant thereafter took adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. *See EEOC v. Avery Dennison Corp.,* 104 F.3d 858, 860 (6th Cir.1997).

Defendant contends that Plaintiff is unable to satisfy the adverse action requirement because the adverse action complained of, *i.e.,* Tectum's filing of a counterclaim, cannot be considered employment-related since it occurred nearly two years after Plaintiff's employment was terminated. Defendant argues that it is well-established in the Sixth Circuit that in order to satisfy the adverse action requirement, Plaintiff must show a "materially adverse employment action."

In *Kocsis v. Multi–Care Management, Inc.,* 97 F.3d 876, 886 (6th Cir.1996), the Sixth Circuit identified several factors which identify whether an employment action is materially adverse. The factors include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Id.* at 886.

The Plaintiff does not dispute this authority, but argues that a counterclaim can constitute adverse action for purposes of a retaliation claim. In support of this proposition, Plaintiff relies on *EEOC v. Outback Steakhouse of Florida, Inc.,* 75 F.Supp.2d 756 (N.D.Ohio 1999). In that case, the court held that the anti-retaliation provision of Title VII is not limited simply to discrimination affecting employment terms but may include other forms of discrimination that are allegedly adverse to the employee or former employee. The EEOC commenced its lawsuit against Defendant Outback Steakhouse alleging that a counterclaim that Outback had filed against its former employee in a separate, earlier action for sexual harassment commenced by the employee, constituted retaliation under Title VII. Outback moved to dismiss the claim by the EEOC on the basis that its earlier counterclaim against the former employee had no affect on her employment status and could not be actionable under Title VII. The district court disagreed.

The court's analysis started with the anti-retaliation statute itself, which pro-

vides: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this subchapter." 42 U.S.C. § 2000e–3. The court recognized that the term "employee" includes "former employee." *Id.* at 757–58, citing *Robinson v. Shell Oil Co.*, 519 U.S. 337, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). The court went on to conclude that the kind of discrimination prohibited cannot be limited simply to a change in employment status.

The reasoning for this is simple: nothing in the plain language of the statute admits of such a qualification, and there is nothing in the statute which the Court finds ambiguous. Title VII states that employers cannot discriminate against employees in retaliation for employees' participation in claims brought under the statute. In the case at hand, the Complaint alleges that Outback discriminated against Ms. Inman in filing a counterclaim against her, and that Outback had a retaliatory motive in doing so. "If the statutory language is unambiguous, in the absence of a 'clearly expressed legislative intent to the contrary, that language must be regarded as conclusive.'" *Russello v. United States* 464 U.S. 16, 20, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) (citations omitted). The EEOC's Complaint states a claim under the unambiguous language of 42 U.S.C. § 2000e–3.

*Id.* at 758.

Furthermore, the court reasoned that, although the substantive provisions of Title VII clearly limit actionable discrimination to claims that are related to employment, the anti-retaliation provision "contains no such qualifiers, prohibiting only discrimination that takes place because an employee has 'made a charge, testified, assisted, or participated' in actions under Title VII. The inclusion of qualifying language in Title VII's substantive provision, and its exclusion in the anti-retaliation provision, implies that a retaliatory act need not be employment-related in order to be actionable under Title VII." *Id.*

The court further reasoned that this result is not inconsistent with the holding in *Kocsis*, which did "not pass on whether the retaliatory act needs to be employment related under Title VII. Rather ... [it only goes] to whether the alleged retaliatory act was sufficiently adverse." *Id.* at 759. Indeed, as the court observed, the Supreme Court has held that lawsuits have a sufficiently adverse chilling effect on employees wishing to avail themselves of statutory protection. *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983).

With respect to the argument that district courts have other means by which to deal with counterclaims that are truly filed in bad faith, the court reasoned: "Courts may indeed have the tools to deal with bad faith litigation; but that is essentially a policy consideration that is properly the subject of legislative cognition. It supplies no reason to disregard the language of a statute, if that language is plain and unambiguous. Hence, the better view is that Title VII retaliatory actions need not be employment-related." *Id.* at 760. Indeed, other courts have reached the same conclusion. *See EEOC v. Virginia Carolina Veneer Corp.*, 495 F.Supp. 775 (W.D.Va. 1980); *Cozzi v. Pepsi–Cola General Bottlers, Inc.*, No. 96C7228, 1997 WL 312048 (N.D.Ill. June 6, 1997); *Shafer v. Dallas Co. Hospital Dist.*, No. 3–96–CV–1580–R, 1997 WL 667933 (N.D.Tx. Oct.21, 1997).

▮ While the Sixth Circuit has not addressed this precise issue, this Court is persuaded by the foregoing analysis and,

like the court in *Outback Steakhouses*, concludes that the anti-retaliation provision of Title VII cannot be exclusively limited to adverse actions that are changes in the employment relationship.[4] Indeed, the language of the statute itself does not foreclose the possibility that the filing of a counterclaim can be sufficiently adverse as to amount to retaliation. Further, while there may be other means by which to deal with a counterclaim allegedly made in bad faith, Plaintiff should be able to avail herself under the anti-retaliation provision since the language of the statute itself supports her claim.

The Court notes Defendant's opposition to this view and takes particular notice that the Defendant has cited two cases of the undersigned on the Title VII retaliation standard: *Logan v. Henderson*, No. C2–00–978, 2002 WL 484631 (S.D.Ohio Feb. 12, 2002) and *Brower v. Ross Products*, No. 2:01–471, 2002 WL 484702 (S.D.Ohio Feb. 25, 2002).

In *Logan*, this Court held that an employee of the Postal Service who claimed that a poor performance evaluation and the denial of a lateral job transfer constituted retaliation failed to satisfy the adverse employment action requirement because the actions were not materially adverse. In *Brower*, the Plaintiff was terminated from employment for exceeding the allowed leave for disability. Following her termination, Plaintiff filed a charge of discrimination. Plaintiff claimed retaliation for the Defendant's failure to consider her for available positions following the filing of her discrimination charge. This Court held that Plaintiff failed to state a claim for retaliation because the only adverse action,

i.e., termination, predated the protected activity, i.e., the filing of a charge of discrimination.

These decisions are inapposite to the issue of adverse action presently before the Court. In *Logan*, the action complained of clearly was employment related but the issue was whether it was sufficiently adverse for purposes of Title VII. In *Brower*, there was simply no evidence of an adverse action to state a claim under Title VII. Thus, the Court rejects Defendant's assertion that the foregoing decisions control the issue at bar. As stated above, this Court concludes that the adverse action requirement for a retaliation claim encompasses an allegedly bad faith counterclaim brought by the employer against its former employee. In light of this holding, the Court concludes that Defendant Tectum's motion to dismiss Plaintiff's amended counterclaim must be denied.

The Court notes, however, that neither party has addressed what an employer-defendant must show in summary judgment proceedings or at trial, to establish that its counterclaim is brought for legitimate purposes other than as a means of retaliation. Certainly, the fact that an employee files a charge of discrimination does not immunize such employee from a suit brought by the employer, provided that the employer's motivation is not one of retaliation. The issue is not before the Court under the Defendant's 12(b)(6) motion.

### B. Plaintiff's State Law Claims

Defendant Tectum also seeks dismissal of Plaintiff's claims for abuse of process and spoliation of evidence.

---

4. In *Hayes v. City of Memphis*, 23 Fed.Appx. 529, 531 (6th Cir.2001), the Sixth Circuit noted that it has not yet addressed the issue of whether a retaliation claim by a former employer against his or her former employer must relate to protected activity that occurred during the employment relationship. The Court observed, however, that the policies underlying the statute should be followed.

In order for Plaintiff to establish a claim of abuse of process, she must show that (1) a legal proceeding has been commenced in proper form and with probable cause; (2) the proceeding has been perverted to attempt to accomplish an ulterior motive for which it was not designed; and (3) direct damage has resulted from the wrongful use of process. *See Hahn v. Star Bank*, 190 F.3d 708, 718 (6th Cir.1999) *quoting Yaklevich v. Kemp, Schaeffer, & Rowe Co.*, 68 Ohio St.3d 294, 626 N.E.2d 115 (1994). *See also, Preferred Properties, Inc. v. Indian River Estates, Inc.*, 276 F.3d 790, 801 (6th Cir.2002).

It is undisputed that Tectum filed a counterclaim to Plaintiff's complaint on January 28, 2002. Plaintiff alleges that Tectum filed its counterclaim in order to harass Plaintiff and to intimidate her into settling her claims for less than they are worth. (Pl.Am.Comp.¶¶ 10–11). Plaintiff also alleges that she incurred damages as a result of these alleged actions. (Id.¶ 16). Defendant Tectum asserts that Plaintiff could prove no set of facts that would entitle her to relief because the Defendant has simply filed a counterclaim to protect its legal rights.

The key to the tort of abuse of process is "the purpose for which process is used once it is issued." *Clermont Environmental Reclamation Co. v. Hancock*, 16 Ohio App.3d 9, 11, 474 N.E.2d 357 (Clermont Co.1984). "Abuse of process does not lie for the wrongful bringing of an action but for the improper use, or 'abuse' of process," *i.e.*, using process with an "ulterior motive." *Id.* Further, there must be "a further act in the use of process not proper in the regular course of conduct of the proceeding." *Id.* If one uses process properly, but with a malicious motive, there is no abuse of process. *Id.*

In *Kremer v. Cox*, 114 Ohio App.3d 41, 52, 682 N.E.2d 1006 (Summit Co.1996) a physician instituted suit against another physician for, *inter alia*, abuse of process for allegedly causing him humiliation and embarrassment by instituting an earlier suit. The court held that the claim could not succeed because abuse of process does not lie for the wrongful bringing of· an action. Plaintiff in that case alleged that the suit was brought against him without a probable basis. The court concluded that if the Plaintiff had alleged that the suit was brought with a probable basis but that· the process instituted was somehow "perverted," Plaintiff's abuse of process claim would have had merit. The court further concluded that, at most, Plaintiff had a claim for malicious prosecution. In this regard, the court cited *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A., supra*, in which the Ohio Supreme Court stated:

> The tort of malicious prosecution, whether criminal or civil, provides a remedy when a proceeding is instituted without probable cause. However, it does not provide a remedy for a related, yet different situation. The tort action termed "abuse of process" has developed for "cases in which legal procedure has been set in motion in proper form, with probable cause, and even with ultimate success, but nevertheless has been perverted to accomplish an ulterior purpose for which it was not designed." Prosser & Keeton, The Law of Torts (5 Ed.1984) 897, Section 121. We accept the proposition that the tort of malicious civil prosecution does not provide a remedy for a situation in which process is used to accomplish an improper ulterior purpose. Such a situation occurs when there is an "act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process ***." *Id.* at 898. Accordingly, we recognize the tort of abuse of process as a distinct tort in its own right, distinguish-

able from the tort of malicious civil prosecution.

*Yaklevich,* 68 Ohio St.3d at 297, 626 N.E.2d 115.

 Similar to the Plaintiff in *Kremer,* Plaintiff in this case simply alleges that Tectum initiated its counterclaim to intimidate Plaintiff into settling. Plaintiff makes no allegation that Tectum's counterclaim is brought with probable cause but that Tectum somehow perverted the process by attempting to intimidate her into settlement. In the absence of such allegation, this Court concludes that Plaintiff could prove no set of facts on an abuse of process claim that would entitle her to relief.[5] Thus, Defendant's motion to dismiss is granted.

 Defendant also moves to dismiss Plaintiff's claim for spoliation of evidence. In order to establish her claim, Plaintiff must show that (1) there is a pending or probable litigation involving the plaintiff; (2) knowledge on the part of the defendant that the litigation exists or is probable; (3) willful destruction of the evidence by the defendant designed to disrupt the plaintiff's case; (4) disruption of the plaintiff's case; and (5) damages proximately caused by the defendant's actions. A claim for spoliation of evidence may be brought at the same time as the primary action. *Smith v. Howard Johnson Company, Inc.,* 67 Ohio St.3d 28, 29, 615 N.E.2d 1037 (1993).

Defendant moves to dismiss Plaintiff's claim because she "has not alleged facts to demonstrate that Tectum willfully destroyed the leads and bounce-back cards.... Further, Plaintiff has not even attempted to explain how the absence of such evidence would impair her case in chief." (Motion to Dismiss at 10). Defendant argues that the only party whose case would be impaired by the allegedly missing leads and bounce-back cards is Tectum because in its counterclaim, Tectum seeks to recover damages for Plaintiff's alleged deliberate and willful mismanagement of the leads and bounce-back cards. (*Id.* at 12). In response, Plaintiff argues that she has sufficiently pled her claim for purposes of Rule 8.

 Irrespective of whether the claim is pled sufficiently, the Court concludes that dismissal of the spoliation of evidence claim is appropriate in light of the Court's resolution of Plaintiff's underlying Title VII claim, from which the spoliation claim derives. As stated *supra,* Defendant Tectum has come forward with unrefuted evidence of 435 unentered leads. The Court concludes that this evidence constitutes a legitimate business reason for Plaintiff's termination. Further, Plaintiff has failed to rebut this evidence by showing that the profferred reason for her discharge was pretexual. Although Plaintiff's spoliation claim is premised on the allegation that the Defendant willfully destroyed additional leads and bounce-back cards, because there is unrefuted evidence that at least 435 leads were unentered and because this evidence is sufficient to support her termination, the Court concludes that Plaintiff would be unable to satisfy the fourth prong of a spoliation claim; that is, the disruption of Plaintiff's claim—the Court has already determined that the Defendant is entitled to summary judgment on Plaintiff's Title VII claim. Further, there is no other claim of Plaintiff's for which the allegedly destroyed leads and bounce-back cards has any significance. In light of this posture, the Plaintiff could prove no set of

---

5. The Court notes that, Plaintiff's claims arguably state a basis for relief under a theory of malicious prosecution. Because, however, Plaintiff has not alleged seizure of person or property, allowing Plaintiff to amend her complaint to state this claim would be futile.

facts that would entitle her to relief on a spoliation of evidence theory. The Defendant's motion to dismiss Plaintiff's spoliation claim is granted.

### Plaintiff's Motion to Dismiss

Plaintiff seeks dismissal without prejudice of her claims for intentional infliction of emotional distress, invasion of privacy, and violation of public policy against Doug Tocco and Commercial Ceiling, Inc. (Doc. # 56 and # 57). In opposing the motion, the Defendants seek summary judgment on the claims. (Doc. # 60).

Clearly, Defendants Tocco and Commercial Ceiling have incurred substantial expenses, including attorneys fees, deposition fees and other costs in defending Plaintiff's claims. In seeking dismissal under Rule 41(a)(2), Plaintiff simply states that she does not wish to pursue her claims against Defendants Tocco and Commercial Ceiling at this juncture. In the interests of justice, the Court will grant Plaintiff's motion. However, the Court conditions this decision on the basis that, should Plaintiff refile her claims against Defendants Doug Tocco and Commercial Ceiling, Inc., Plaintiff will be liable for any costs and fees that may be incurred by Defendants Tocco and Commercial Ceiling in having to defend Plaintiff's claims a second time.

### Tectum's Motion to Continue the Trial Date

Tectum moves to continue the trial of this action, which is scheduled to commence on July 22, 2002. (Doc. # 115). The motion is based on the request of counsel, who is in her last trimester of pregnancy, to be able to personally try this case. The Plaintiff has filed no response to the motion.

In light of the rulings indicated above, the Court concludes that continuation of the trial is warranted. Thus, Defendant's motion is granted. The trial date and Final Pretrial Conference are hereby **VACATED**. The Court will establish a new trial date following a conference with all counsel. To this end, a Telephone Status Conference is hereby set for **Friday, July 12, 2002 at 10:00 a.m.** The conference call will be initiated by the Court.

### III.

In light of the foregoing, Defendant Tectum's Motion for Summary Judgment (**Doc.# 82**) is **GRANTED**; Defendant Tectum's Motion to Dismiss Plaintiff's counterclaims (**Doc.# 74**) is **GRANTED in part and DENIED in part**; Plaintiff's Motion for Partial Summary Judgment (**Doc.# 83**) is **DENIED**; Plaintiff's Motion for Leave to Amend her counterclaim (**Doc.# 126**) is **GRANTED**; Plaintiff's Motions for Leave to Dismiss her claims against Defendants Tocco and Commercial Ceiling without prejudice (**Doc. # 56 and # 57**) are **GRANTED**, upon the conditions stated; Defendants Tocco and Commercial Ceiling's Motion for Summary Judgment (**Doc.# 60**) is **DENIED as moot**; Plaintiff's Motion to Dismiss her retaliation counterclaim (**Doc.# 87**) is **DENIED as moot**; Tectum's Motion for Leave to file a Surreply *instanter* (**Doc.# 111**) is **GRANTED**; and Tectum's Motion to Continue the Trial Date (**Doc.# 115**) is **GRANTED**.

**IT IS SO ORDERED.**