JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff, Lonnie Mills, appeals the trial court's Civ.R. 12(B)(6) dismissal of his complaint against Father Anselm, a.k.a. Thomas Deehr, Bishop Pilla, the Cleveland Catholic Diocese, St. Agnes/Our Lady of Fatima Church, and John Doe, Thomas Deehr's supervisor. Mills alleges that Deehr was an employee of the Catholic Church[1] in 1983 through 1987 and that during that time Deehr molested and sexually assaulted him over three hundred times. Mills alleges that these assaults occurred in the rectory at St. Agnes, at a Red Roof Inn, in the "communion room" of the church, and on Catholic Youth Organization ("C.Y.O.") trips.
 {¶ 2} All the defendants filed motions to dismiss for failure to state a claim. Mills filed a motion to amend his complaint and also filed a brief in opposition to the motions to dismiss. Granting all defendants' motions to dismiss, the trial court stated merely the following: "MOTION TO DISMISS COMPLAINT BY DEFTS CATHOLIC DIOCESE OF CLEVELAND AND BISHOP ANTHONY PILLA IS GRANTED. MOTION OF DEFT THOMAS DEEHR TO DISMISS THE COMPLAINT IS GRANTED. MOTION TO DISMISS COMPLAINT FOR DEFT ST AGNES OUR LADY OF FATIMA CHURCH IS GRANTED. FINAL." Appealing, Mills states two assignments of error. For clarity, we will address the second assignment of error first:
II. The trial court committed reversible error by granting appellee's [sic] motion to dismiss appellant's amended complaint for failure to state a claim upon which relief can be granted, pursuant to ohio rules of civil procedure, rule 12(b)(6).
 {¶ 3} In this assignment of error, Mills states erroneously it was the amended complaint that the trial court dismissed. But the court denied as moot his motion to file an amended complaint. All that remained for the court to dismiss, therefore, was the original complaint. However, since Mills' argument goes on to address the complaint that was not amended, we will address the assignment of error as it was argued, not as it was stated.
 {¶ 4} When evaluating a motion to dismiss for failure to state a claim, the court accepts all factual allegations contained in the complaint as true and draws all reasonable inferences from those factual allegations in favor of the nonmoving party. Byrd v. Faber (1991), 57 Ohio St.3d 56. "When reviewing a judgment granting a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim, an appellate court must independently review the complaint to determine" whether "dismissal was appropriate. * * * The appellate court need not defer to the trial court's decision in Civ.R. 12(B)(6) cases. * * * Dismissal of a claim for failure to state a claim upon which relief may be granted is appropriate only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. * * * In construing a complaint on a motion to dismiss pursuant to Civ.R. 12(B)(6), a court must presume all factual allegations contained in the complaint to be true and make all reasonable inferences in favor of the non-moving party. * * * However, a court need not presume the truth of conclusions unsupported by factual allegations. Id. at 193." Guess v. Wilkerson (1997), 123 Ohio App.3d 430,433-434, citations omitted.
 Deehr {¶ 5} The complaint against Deehr alleged that he "engaged in harmful, intentional, reckless, illegal, and offensive sexual abuses, assaults, and batteries against Lonnie Mills" and thereby "caused Lonnie Mills severe emotional distress, bodily harm, and emotional and psychological injury." It also alleges that by holding himself out as a religious instructor and a Brother of the Catholic Church, he entered into a fiduciary relationship with Mills and that Deehr violated his fiduciary duties by abusing Mills.
 {¶ 6} Deehr's motion to dismiss addressed only the statute of limitations, which is one year for this tort. Ault v. Jasko
(1994), 70 Ohio St.3d 114. This statute begins to run, however, either within one year of the victim's eighteenth birthday or, if the victim has repressed the memory of the abuse, within one year of the victim's recovery of that memory. Id. Deehr argues that because Mills failed to specifically state that he did not recover his memory of the abuse until less than one year prior to filing his complaint, the complaint is time-barred.
 {¶ 7} Mills' complaint did not specify the date he first recovered his memory on this matter. Nonetheless, Mills states twice that he had repressed his memories of the abuse. First, he states in his facts that "[a]ll Defendants knew or should have known that the abuse perpetrated by [Deehr] would prevent Mr. Mills from discovering his injuries, and exacerbate his emotional trauma from these events." Under the first count, which was directed against Deehr, Mills states that the abuse "caused him to repress the memories of the abuse, which prevented and delayed him from discovering his injuries and the defendants responsible for them[.]"
 {¶ 8} In his response to the motions to dismiss, however, Mills states that he can prove "that the event that triggered the recovered memory occurred while [Mills] was watching CNN coverage of the allegations against Father Paul Shanley, the Boston cleric who is accused, like Defendant Deehr, of hundreds of acts of sexual abuse." Mills further states in that response that he can prove that he repressed the memory before his nineteenth birthday and recovered it in January of 2002, less than one year before he filed his suit. It is unclear why Mills failed to include this information in his proposed amended complaint, which was filed the day before this response.
 {¶ 9} Nonetheless, "since Ohio is a notice-pleading state, Ohio law does not ordinarily require a plaintiff to plead operative facts with particularity. Under the Ohio Rules of Civil Procedure, a complaint need only contain `a short and plain statement of the claim showing that the party is entitled to relief.' Civ.R. 8(A)(1). Consequently, `as long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss.'" Cincinnati v. Beretta U.S.A.Corp. (2002), 95 Ohio St.3d 416, ¶ 29, quoting York v. OhioState Hwy. Patrol (1991), 60 Ohio St.3d 143, 145.
 {¶ 10} Even without this information, however, Mills stated sufficient information in his complaint to avoid dismissal for failure to state a claim. "It is a well-settled rule that a complaint should not be dismissed for failure to state a claim upon which relief can be granted unless it appears beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." Krause v. Case Western ReserveUniversity (Dec. 19, 1996), Cuyahoga App. No. 70526, 1996 Ohio App. LEXIS 5771, at *6. "The affirmative defense of statute of limitations is generally not properly raised in a Civ.R. 12(B)(6) motion, as it usually requires reference to materials outside the complaint. Steiner v. Steiner (1993), 85 Ohio App.3d 513, 518,620 N.E.2d 152. Only when it is apparent from the face of the complaint, may such an affirmative defense be raised in a Civ.R. 12(B)(6) motion. Helman v. EPL Prolong, Inc.,139 Ohio App.3d 231, 241, 2000-Ohio-2593,743 N.E.2d 484. The complaint must show the relevant statute of limitations and the absence of factors which would toll the statute or make it inapplicable. Id."Andrews v. Lampert, Lake App. No. 2002-L-022, 2003-Ohio-2370, ¶ 12. In the case at bar, Mills alleges in his complaint and proposed amended complaint that his memories of the abuse were repressed. Since the statute of limitations allows an exception for repressed memories, it cannot be "beyond a doubt from the complaint" that Mills cannot prove the requisite facts. Because Ohio is a notice pleading state, it suffices that the complaint put defendants on notice of the general claim. It was not necessary to specify facts to defend from a statute of limitations defense. The court may infer that the memories reappeared only within the statute of limitations and thus could find that the complaint stated a claim upon which relief could be granted. Any Civ.R. 12(B)(6) dismissal, therefore, for failure to file within the statute of limitations was in error.
 {¶ 11} Further, we note that the trial court did not convert this motion to a motion for summary judgment. Its judgment entry states: "MOTION TO DISMISS COMPLAINT BY DEFTS CATHOLIC DIOCESE OF CLEVELAND AND BISHOP ANTHONY PILLA IS GRANTED. MOTION OF DEFT THOMAS DEEHR TO DISMISS THE COMPLAINT IS GRANTED. MOTION TO DISMISS COMPLAINT FOR DEFT ST AGNES OUR LADY OF FATIMA CHURCH IS GRANTED. FINAL." "If the court does not convert the motion to one for summary judgment, its ruling is only a test of the sufficiency of the complaint." Mirick v. McClennan (Apr. 27, 1994), Hamilton App. No. C-930099, 1994 Ohio App. LEXIS 1816, at *15.
 The Diocese, Bishop, St. Agnes Church, and John Doe {¶ 12} The complaint against the Diocese, the Bishop, and St. Agnes Church alleges negligent hiring and retention. It also states a separate claim for negligent supervision and vicarious liability under the doctrine of respondeat superior against all four of these defendants. In addressing the negligent hiring and retention claim, the responding defendants rely on Byrd, supra. In Byrd, the Ohio Supreme Court held: "A plaintiff bringing a negligent hiring claim against a religious institution must plead operative facts with particularity in order to survive a Civ. R. 12(B)(6) motion to dismiss." Id. at syllabus. The plaintiff inByrd alleged that when she went to the pastor for counseling, he forced her to have sexual relations with him. Suing the Seventh Day Adventists for negligent hiring, she and her husband claimed that the church knew or should have known that the pastor had a proclivity toward improper sexual behavior with parishioners. Byrd failed to allege, however, any facts which showed that the Seventh Day Adventists would know or should have known that the pastor would behave this way. Granting the motion to dismiss, the court ruled that to survive the motion to dismiss, Byrd should have alleged "some fact indicating that the religious institution knew or should have known of the employee's criminal or tortious propensities." Byrd at 60-61. In the case at bar, Mills concedes that he failed to state a claim for negligent hiring under this heightened standard. He asserts, however, that under this standard he has stated a claim for negligent retention. We agree.
 Negligent Retention {¶ 13} The elements of negligent retention are: 1) an employment relationship; 2)incompetence of the employee; 3)actual or constructive knowledge of the incompetence by the employer; 4) an act or omission by the employee which caused the plaintiff's injuries; and 5) negligent retention of the employee by the employer, which action is the proximate cause of the plaintiff's injuries. Steppe v. Kmart (1999), 136 Ohio App.3d 454, 465.
 {¶ 14} The Diocese and the Bishop argue that because Deehr was a Brother with a religious order and not a diocesan priest or diocesan brother, Mills has failed to state an operative fact supporting that he was an employee. Mills' complaint stated, however, that Deehr was a diocesan employee, whose responsibilities included pastoral care at St. Agnes Church, coaching C.Y.O. basketball, and driving the team bus for C.Y.O. games. Mills further stated that Deehr lived at the St. Agnes rectory and that Deehr paid Mills out of the rectory's petty cash to do odd jobs. Taking the above statements as true and drawing reasonable inferences from them, we find that Mills has stated sufficient operative facts at this point to show that Deehr was an employee of the diocese.
 {¶ 15} The responding defendants do not dispute the second requirement, that Deehr was "incompetent," or, in other words, not performing the job as required. They do deny the third prong: that they had actual or constructive knowledge of the abuse. Clearly, actual knowledge is difficult to prove in a complaint of this sort. Constructive knowledge, on the other hand, requires only that the diocese should have known about Deehr's abusive activities. Byrd. In his first complaint, Mills provided sufficient operative facts for his claim of constructive knowledge to survive this initial stage. He stated that Deehr had him in his room at the rectory "frequently until 11:00 — 12:00 AM." Alone, this allegation of conduct, so unusual it is capable of being observed, adequately identified, at this stage, operative facts for his claim that the Bishop and The Diocese defendants had constructive knowledge of Deehr's improper relationship with Mills.
 {¶ 16} In his proposed amended complaint, Mills added operative facts which further supported his negligent retention claim. He stated that he was in Deehr's room at the rectory "hundreds of times until 11:00 PM, and, on dozens of occasions, until 2:00 AM." He also states that he "was seen on several occasions, ostensibly taking `Communion' with Defendant Deehr, inside a small closet before Mass on Sundays, which should have aroused suspicion * * *." Finally, Mills alleged in his amended complaint that Deehr paid him from the rectory's petty cash for odd jobs around the church and rectory although he did not perform any such jobs. Mills states in the proposed amended complaint that "[t]his should have alerted Diocesan officials, through general audit procedures, that a suspicious drain on the limited petty cash of St. Agnes was occurring."
 {¶ 17} The complaint also clearly provides the fourth element of negligent retention: an actual act or omission by the employee which caused the injury. Finally, the fifth element, that the employer's negligent retention of the employee was the proximate cause of the injury is also supported with operative facts. "Byrd requires Appellants show the church knew or with reasonable diligence should have known of criminal, tortious, or dangerous conduct." Doe v. First Presbyterian Church (1998),126 Ohio App.3d 358, 366. The complaint states Mills was in Deehr's room at the rectory into the early hours of the morning over the course of four years. Mills asserts that defendant, John Doe, Deehr's direct supervisor who lived at the rectory, was well aware of the late night visits. The rectory is the property of the Diocese, and Deehr's C.Y.O. and church activities were intended to further the mission of the diocese. Deehr was living on church property, eating food provided by the church, and dispensing church petty cash to Mills. If the facts as stated in the complaint are taken as true, they provide a sufficient basis from which one might reasonably infer that Mills spent an inordinate amount of time alone with Deehr in inappropriate places and at inappropriate times both in the rectory and the sacristy and therefore are sufficient to assert a claim that his supervisor and thus the other defendants negligently exposed Mills to harm by retaining Deehr after they had constructive knowledge of his suspicious activities. The responding defendants' failure to intervene in Deehr's actions, despite their alleged constructive knowledge of them, allegedly permitted the abuse to continue and is, according to the complaint, the proximate cause of his injury. These facts are sufficient to withstand a motion to dismiss for failure to state a claim. As the Ohio Supreme Court stated, "`as long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss.'" Cincinnati,95 Ohio St.3d at 416, 415, quoting York, at 60 Ohio St.3d at 145.
 {¶ 18} We find that Mills has pleaded sufficient operative facts in his complaint to support his claim of negligent retention.
 Negligent Supervision {¶ 19} Count four states a claim for "negligent supervision and vicarious liability (respondeat superior)" against the Diocese, the Bishop, and St. Agnes Church. Mills' claim of negligent supervision depends upon the doctrine of respondeat superior. Specifically, he claims that the Diocese and the Bishop are responsible for his injuries because Deehr was furthering the church's business when he committed these acts. In his first complaint, Mills alleged merely that Deehr was under the supervision and control of the Diocese and the Bishop and that the acts occurred "while [Deehr] was acting in the scope and course of his employment with these defendants and/or by virtue of the authority vested in him by these defendants." He also stated that the defendants "failed to supervise [Deehr] and failed to prevent [his] misconduct against Mr. Mills." These allegations are insufficient to support a claim of respondeat superior.
It is well-established [sic] that in order for an employer to be liable under the doctrine of respondeat superior, the tort of the employee must be committed within the scope of employment. Moreover, where the tort is intentional, as in the case at bar, the behavior giving rise to the tort must be "calculated to facilitate or promote the business for which the servant was employed * * *." Little Miami RR. Co. v. Wetmore (1869),19 Ohio St.110, 132; Taylor v. Doctor's Hosp. (1985),21 Ohio App.3d 154, 21 OBR 165, 486 N.E.2d 1249. For example, an employer might be liable for an intentional tort if an employee injures a patron when removing her from the employer's business premises or blocking her entry. The removal of patrons, who may be unruly, underage, or otherwise ineligible to enter, is calculated to facilitate the peaceful and lawful operation of the business. Consequently, an employer might be liable for an injury inflicted by an employee in the course of removal of a patron. See, e.g.,Stewart v. Napuche (1952), 334 Mich. 76, 53 N.W.2d 676; Kentv. Bradley (Tex.Civ.App. 1972), 480 S.W.2d 55.
However, the employer would not be liable if an employee physically assaulted a patron without provocation. As we held inVrabel v. Acri (1952), 156 Ohio St. 467, 474, 103 N.E.2d 564,568, "an intentional and wilful attack committed by an agent or employee, to vent his own spleen or malevolence against the injured person, is a clear departure from his employment and his principal or employer is not responsible therefor." See, also,Schulman v. Cleveland (1972), 30 Ohio St.2d 196, 59 O.O.2d 196,283 N.E.2d 175. In other words, an employer is not liable for independent self-serving acts of his employees which in no way facilitate or promote his business.
Byrd at 58.
 {¶ 20} Nothing in Mills' original complaint supports the claim that Deehr's alleged assault of Mills was an act in furtherance of church business. In his amended complaint, Mills added five specific instances which he claimed supported his assertion that Deehr's actions were in furtherance of church business. First, he states that the payments Deehr gave him from petty cash were for odd jobs around the rectory and church. "Eventually, Plaintiff's job duties diminished, and Brother Anselm was using the payments as a reward for sex. But the payments were facilitating the Church mission of keeping the rectory well maintained." Second, Mills states that, shortly after the abuse started, Deehr "used his influence to get" him a scholarship to St. Joseph's High School and that this admission to the Catholic school furthered the church's purpose by "serving the Church's mission to educate youth in the Roman Catholic curriculum." Third, Mills states that Deehr referred to Mills as his "own little Catholic" and tried to convert him while he was abusing him. He states Deehr "attempted the religious conversion of Plaintiff through prayers, one-on-one Communion sessions, during the abusive acts. Conversion to Catholicism furthers the Church mission." Fourth, Mills states that in their prayers they would ask that Mills return home safely and without being arrested for violating curfew when he had been in Deehr's room late at night. Finally, Mills states that Deehr told him Deehr needed Mills' presence to function and perform his church duties. Mills claims, therefore, that Deehr "saw him as an indispensable part of his execution of his duties to Defendant's Diocese, Pilla, and St. Agnes."
 {¶ 21} As the Byrd Court noted, however, quoting a California court,
 {¶ 22} "It would defy every notion of logic and fairness to say that sexual activity between a priest and a parishioner is characteristic of the Archbishop [sic] of the Roman Catholic Church. * * * Similarly, appellant has not pointed out any fact which could lead this court to the conclusion that the Archbishop `ratified' the concupiscent acts of the priests."
 {¶ 23} Byrd at 59, quoting Milla v. Tamayo (1986),187 Cal.App.3d 1453, 232 Cal.Rptr. 658, at 1461, 232 Cal.Rptr. 690. Even with the creative interpretations contained in Mills' amended complaint, we find no evidence that Deehr's actions were ratified by the church in furtherance of its mission. Such a violation of trust and of a religion's moral code cannot be said to further the goals of the religion. Although Mills has stated specific facts to support his claim of negligent supervision, his claim of respondeat superior fails.
 Breach of Fiduciary Duty {¶ 24} Mills also states a claim for breach of fiduciary duty against Deehr, St. Agnes Church, the Diocese, Bishop Pilla, and John Doe. Deehr articulated no defense specific to this allegation. The Bishop and the Diocese argue that because Deehr was not a diocesan brother, he was not their employee.[2]
If the court takes the facts as stated in the pleadings as true, however, it would not be unreasonable to conclude Deehr was indeed an employee of the Diocese and therefore an employee under the supervision of the Bishop. Whether Deehr was an employee of the Diocese as asserted, however, is a question of fact and not appropriate for a 12(B)(6) motion, which tests the legal sufficiency of a complaint.
 {¶ 25} Even if Deehr was not an employee but rather a voluntary agent, the church could still be held responsible for his actions. The Diocese allowed Deehr to supervise and coach C.Y.O. activities. Because it is reasonable to claim the Diocese had a duty to protect the participants in its youth program from its agents, Mills' complaint, if taken as true, is sufficient to state a claim against the Diocese. In a similar case, the First District noted that "[a] fiduciary is one who, by the undertaking, has a duty to act primarily for the benefit of another." Mirick v. McClennan (April 27, 1994), Hamilton App. No. C-930099, 1994 Ohio App. LEXIS 1816, at *14. The Mirick
court noted that a claim for breach of fiduciary duty against a Diocese depended upon the existence of an underlying tort claim. Here, we have a valid underlying tort claim against Deehr for sexual abuse. If, as in Mirick, upon remand it is determined that the complaint is outside the statute of limitations, then the fiduciary duty claim will cease to exist. Id.
 {¶ 26} The Diocese and Bishop also argue that they had no duty to report Deehr's abuse. Failure to report abuse, however, was not a cause of action in the complaint. Rather, Mills alleges that despite numerous opportunities to discover the abuse, the church ignored the hundreds of acts of abuse which occurred not only in its rectory, but even in its sacristy before Mass. Mills has stated a cause of action for breach of fiduciary duty when the church had constructive notice of the abuse. Mills has adequately stated facts which, if believed, support a cause of action under tort. The trial court erred in granting the motion to dismiss under the claim of breach of fiduciary relationship. This assignment of error has merit.
 {¶ 27} Mills' first assignment of error states:
The trial court abused its discretion by denying appellant's motion to amend its complaint a full year prior to the trial date.
 {¶ 28} Defendants' motions to dismiss were filed on February 27, 2003, March 3, 2003, and March 14, 2003. Mills filed a "motion instanter to file amended complaint" along with an amended complaint on March 19, 2003, and a joint response to the motions to dismiss on March 20, 2003. Trial had already been scheduled for March 22, 2004. The trial court granted the motions to dismiss on March 31, 2003 and the same day denied Mills' motion to amend his complaint. The next day, Mills filed a motion for findings of fact and conclusions of law, which motion the court denied.
 {¶ 29} Amended complaints are controlled by Civil Rule 15, which states in pertinent part:
A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within twenty-eight days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party. Leave of court shallbe freely given when justice so requires. (Emphasis added.)
 {¶ 30} The general rule is that a leave to amend a complaint should be freely granted. As the Ohio Supreme Court stated: "The standard of review for Civ.R. 12(B)(6) motions is also consistent with Civ.R. 15(A), which allows a pleader to rectify a poorly pleaded complaint. If a motion for failure to state a claim is sustained, `leave to amend the pleading should be granted unless the court determines that allegations of other statements or facts consistent with the challenged pleading could not possibly cure the defect.'" State ex rel. Hanson, d.b.a. FranklinExcavating v. Guernsey Cty Bd. of Commrs. (1992),65 Ohio St.3d 545, 549, citation omitted.
 {¶ 31} Here, the trial court did not indicate its reason for granting the motions to dismiss. The court's ruling on the motion to amend the complaint stated that the motion was "denied as moot as this matter has been dismissed." We do not know, therefore, whether the court's decision was a result of its belief that the pleading could not be cured.
 {¶ 32} A reviewing court evaluates a trial court's grant of a Civ.R. 12(B)(6) motion under an abuse of discretion standard. Nonetheless, "although the disposition of a motion for leave to amend a pleading is discretionary, the denial of leave to amend a complaint constitutes an abuse of discretion when a plaintiff may, by an amended complaint, set forth a claim upon which relief may be granted, when the motion for leave to amend was tendered in a timely manner and in good faith, and when no justification for denying leave is disclosed on or apparent from the record."Forney v. Cincinnati Reds, Inc. (Dec. 14, 1988), Hamilton App. No. C-880016, 1988 Ohio App. LEXIS 4937, at *7 citing Petersonv. Teodosio (1973), 34 Ohio St.2d 161, paragraph six of the syllabus.
 {¶ 33} In the case at bar, the motion to file an amended complaint was filed within three months of the original complaint, over a year before the trial date, and before the court ruled on the motions to dismiss.
 {¶ 34} The parties who moved for the dismissal do not allege in their responses to the appeal that they would be prejudiced by the amendment or that it was untimely filed. Rather, they claim that allowing Mills to file an amended complaint would be an exercise in futility because he could not state a claim upon which relief could be granted.
 {¶ 35} Even when a Civ.R. 12(B)(6) motion has merit because the complaint on its face is statutorily barred, however, a trial court errs in denying leave if it is "possible" the amended complaint "may" set forth a cognizable claim.
The spirit of the Civil Rules is the resolution of cases upon their merits, not upon pleading deficiencies. Civ. R. 1(B) requires that the Civil Rules shall be applied "to effect just results." Pleadings are simply an end to that objective. The mandate of Civ. R. 15(A) as to amendments requiring leave of court, is that leave "shall be freely given when justice so requires." Although the grant or denial of leave to amend a pleading is discretionary, where it is possible that the plaintiff, by an amended complaint, may set forth a claim upon which relief can be granted, and it is tendered timely and in good faith and no reason is apparent or disclosed for denying leave, the denial of leave to file such amended complaint is an abuse of discretion. We observe no good reason why leave should have been denied in this case, and therefore hold that the overruling of the motion for leave to amend constituted prejudicial error.
Peterson v. Teodosio (1973), 34 Ohio St.2d 161, 175.
 {¶ 36} In the case at bar, as noted above, the original complaint was sufficient to avoid dismissal under Civ.R. 12(B)(6). In another case, the Sixth Appellate District, reversing an order denying a request to amend a complaint, explained that "plaintiff's proposed amended complaint expands more fully on the claim for relief * * *." Green v.Owens-Illinois, Inc. (Apr. 8, 1977), Lucas App. No. L-76-225, 1977 Ohio App. LEXIS 10090, at *4. Similarly here, the proposed amended complaint did not add any new claims or parties; rather, it merely alleged additional facts to support the claims in the original complaint.[3]
 {¶ 37} Defendants' responses to this assignment of error relied in part on the Fifth Appellate District's case of Doe v.Turner (July 11, 1994), Stark App. No. CA-0027, which held that "if a plaintiff fails to make a prima facie showing of support for new matters sought to be pleaded, a trial court acts within its discretion to deny a motion to amend the pleading." Id. at *6. As we stated above, however, on all but the respondeat superior claim, Mills' original complaint was sufficient to survive a motion to dismiss for failure to state a claim upon which relief could be granted. The amended complaint, in response to defendants' reliance on Byrd, merely enhanced the specificity of the original complaint. None of the defendants showed, moreover, that they would be prejudiced if the amended complaint had been granted; the amendment provided them only with specific information Mills planned to use in his suit
 {¶ 38} Except for the theories of negligent hiring and vicarious liability, the original complaint provided operative facts sufficient to go to the next stage of the proceedings; the court erred, therefore, in dismissing the case. Additionally, because the motion to amend the complaint was timely filed and it was not shown that granting the motion would prejudice any of the parties, the trial court also erred in denying Mills' motion to amend his complaint. This assignment of error has merit.
 {¶ 39} This case is affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.
 Blackmon, P.J., and Gallagher, J., concur.
This cause is affirmed in part; reversed in part.
It is, therefore, ordered that appellant and appellees share the costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
[1] The original complaint states the Deehr was "employed as a Brother of the Roman Catholic Church." The record does not indicate his order. Sometime after the events which are the subject of this suit, Deehr became a priest. He no longer resides in Ohio.
[2] Deehr's order of brothers was headquartered out of state.
[3] We note that, although Mills stated in his responses to the motions to dismiss that he had repressed his memory of the abuse until less than one year before he filed his complaint, he did not include this claim in his amended complaint. Such a claim would have strengthened his complaint and eliminated the statute of limitations defense upon which the defendants rely.