PAYTON, Appellant,

v.

RECEIVABLES OUTSOURCING, INC., et al., Appellees.

[Cite as *Payton v. Receivables Outsourcing, Inc.,* 163 Ohio App.3d 722, 2005-Ohio-4978.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 85182.

Decided Sept. 22, 2005.

726

Robert A. Poklar & Associates, Inc., Robert A. Poklar, Tina Rhodes, and Heather Ross; Zipkin, Fink & Whiting Co., L.P.A., Jeff Lurie, James T. Schumacher, and Lewis A. Zipkin, for appellant.

McDonald, Hopkins, Burke & Haber, Douglas B. Schnee, William J. O'Neill, and Lynette M. Falkowski, for appellees.

---

KARPINSKI, Judge.

{¶ 1} Plaintiff, Marilyn Payton ("the employee"), appeals the trial court's granting of summary judgment in favor of her employer, Receivables Outsourcing. The employee worked for the employer for six weeks. She alleges that during that six weeks, she was sexually harassed by a fellow employee, Mark Blackwell ("the alleged harasser"), who was assigned to train her at her job. The employee testified in her deposition that within two weeks of starting the job, the alleged harasser told her she smelled good and asked her out. She declined, stating that she did not mix business with pleasure. Another incident of alleged harassment occurred when, according to the employee's testimony, she and another male co-worker were talking. The alleged harasser joined the conversation, telling them that he wished he had met her sooner, that he wanted to ride with her on her motorcycle, and that she had large breasts and he liked large breasts. It is undisputed that the employee did not report either of these incidents to her employer.

{¶ 2} The final incident occurred on a Friday as the employees were clocking out. The employee had put her baseball cap on backwards, and the alleged harasser told her she looked like a "strawberry," a slang term for a woman who exchanges sex for crack cocaine or money to buy crack cocaine. The employee told him to shut up. After she had driven from the company parking lot and stopped her car at a traffic light, the alleged harasser pulled his car into the lane next to hers. She claims he indicated to her that she should lower her passenger window so they could talk. When she did, he offered her $10 to perform a sex act. The employee testified that she took great offense at this proposition. After the light changed, the employee and the alleged harasser's cars turned in opposite directions onto the cross street.

{¶ 3} The employee testified in her deposition that she cried most of the weekend after this proposition and on Sunday paged the manager to report the

situation. The manager immediately returned her call, and she told him that the alleged harasser had called her a "strawberry" and offered her money for sex and that she was afraid of him. The manager told her he would take care of it Monday morning.

{¶ 4} When the employee arrived at work for her scheduled shift at 11:15 Monday morning, the manager was not in the office. She asked the company lawyer, who was a member of the management team but was not technically her boss, where the manager was. He told her the manager was with a client and then asked whether he could help her. She replied, "Possibly," but when she did not immediately start speaking, he walked away and went into his office. She testified that she tried repeatedly to telephone the company lawyer, but he did not answer the phone. She could see him sitting in his office while she tried to call. Finally, she took two copies of a written description of the alleged sexual-harassment offenses of the previous Friday into his office, gave them to him, and told him she was leaving. When he told her she could not just walk in and say she was leaving, she responded, "Why not?" and walked out of the building. She testified that she did not feel safe in the office without the manager there and she did not trust the lawyer to protect her, because he was a good friend of the alleged harasser.

{¶ 5} The following day, she reported to work on time and, after 30 minutes, was called into the manager's office. When the manager asked her what had happened the day before, she told him that without the manager there, she was afraid to stay in the office with the alleged harasser. The manager then told her that she was fired because she had walked off the job the day before, while she was still in her probationary period. He did not inquire about or discuss the alleged harassment that was her reason for leaving the job the day before.

{¶ 6} She filed a suit against the employer and the manager, which she subsequently dismissed and refiled. After the court granted summary judgment on the refiled complaint, the employee appealed, stating three assignments of error. The first is:

> I. The trial court erred in granting defendant-appellee's motion for summary judgment where there remained genuine issues on fact as to whether plaintiff-appellant was subjected to hostile work environment sexual harassment and sex discrimination.

{¶ 7} The employee maintains that the alleged harasser's actions in calling her a "strawberry" and offering her money for sex created a hostile work environment. Sexual harassment is a form of illegal discrimination. As this court noted in *Powers v. Ferro Corp.*, Cuyahoga App. No. 79383, 2002-Ohio-2612, 2002 WL 1041850, at ¶ 40, "R.C. 4112.02(A) makes it an unlawful discriminatory practice for any employer, because of the sex of any person, to discriminate

against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment. This includes subjecting the employee to sexual harassment."

{¶ 8} Exposing an employee to sexual harassment on the job can create an illegal hostile work environment. *Oncale v. Sundowner Offshore Serv., Inc.* (1998), 523 U.S. 75, 78, 118 S.Ct. 998, 140 L.Ed.2d 201. In fact, "[a] single act of sexual harassment may be sufficient to create a hostile work environment if it is of such a nature and occurs in such circumstances that it may reasonably be said to characterize the atmosphere in which a plaintiff must work." *Temparali v. Rubin* (E.D.Pa.1997), No. 96-5382, 1997 U.S. Dist. LEXIS 8845, at 5. *Bedford v. Southeastern Pennsylvania Trans. Auth.* (E.D.Pa.1994), 867 F.Supp. 288, 297. The employee here argues that the one incident she reported to her employer, in combination with other episodes of harassment, suffices to constitute a hostile work environment.[1]

{¶ 9} To establish a hostile work environment, the employee must show "(1) that the harassment was unwelcome, (2) that the harassment was based on sex, (3) that the harassing conduct was sufficiently severe or pervasive to affect the 'terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment,' and (4) that either (a) the harassment was committed by a supervisor, or (b) the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action." *Hampel v. Food Ingredients Specialties, Inc.* (2000), 89 Ohio St.3d 169, 176–177, 729 N.E.2d 726.

{¶ 10} In the case at bar, the employee testified in her deposition that the harassment was unwelcome. Because she provided testimony to support this requirement, the first prong of the test, that the harassment be unwelcome, is satisfied.

{¶ 11} The next prong, that the harassment was based on sex, is clear from the context of the comments the employee complains of. In calling her a "strawberry," the alleged harasser used a slang term for a woman selling sexual favors. He also offered her money for sex.

{¶ 12} The employee has presented evidence, therefore, that the harassment was based on sex. This satisfies the second prong of the requirements for establishing a hostile work environment.

---

1. The employee also testified that the alleged harasser told her she smelled good on one occasion, asked her for a ride on her motorcycle another time, told her she had large breasts and that he liked large breasts, and told her he had tried to call her at home but got no answer. The employee does not deny that she did not complain to the manager about those incidents.

{¶ 13} The third prong of the test requires that the harassment be so severe or pervasive that it affects the "terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." *Hampel*, 89 Ohio St.3d at 177, 729 N.E.2d 726. The fact that actual propositioning occurred away from the workplace does not prevent the court from considering that harassment in determining the existence of a hostile work environment. "While conduct outside the workplace and work hours ordinarily does not create a hostile work environment, see *Candelore v. Clark County Sanitation District*, 975 F.2d 588, 590 (9th Cir.1992), an employee who is forced to work for or in proximity to someone who is harassing her outside the workplace may reasonably perceive the work environment to be hostile as a result." *Temparali*, 1997 U.S. Dist. LEXIS 8845, at 7–8. To satisfy the third prong, the employee is not required to show that the harassment was both severe and pervasive. Rather, "[t]he *Harris* standard requires that the conduct be sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and thereby create a hostile or abusive working environment." *Burnett v. Tyco Corp.* (2000), 203 F.3d 980, 984.

{¶ 14} What qualifies as severe and pervasive is fact-specific and has been interpreted by the courts: "not all workplace conduct that may be described as 'harassment' affects a 'term, condition, or privilege' of employment within the meaning of Title VII." *Meritor Sav. Bank, FSB v. Vinson* (1986), 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49.

{¶ 15} The employee must show that the abuse was either severe enough or pervasive enough to show that a condition of her "work environment had been affected." *Burnett*, 203 F.3d at 984. In the case at bar, the employee testified that after the alleged harasser offered her money for sex, she was so afraid of him that she did not feel safe being in the office with him unless the supervisor was also present. Clearly, this allegation that her work environment had been affected meets the third prong.

{¶ 16} The employer argues that the employee complained of only one incident before she walked off the job. That there was only one complaint is not, however, fatal to her claim at this point.

{¶ 17} The United States District Court for the Southern District of Ohio, Eastern Division, considered a single incident in which a salesperson from another company made sexually explicit comments in the presence of one of her supervisors to the plaintiff, both at a work function and at a sports bar afterward. The plaintiff claimed that the supervisor had failed to intervene. The court held that this one instance was sufficiently egregious to establish an issue of fact. As the court further explained, however, "[f]or a single incident to constitute

actionable harassment, the conduct must be particularly egregious." *Gliatta v. Tectum* (S.D.Ohio 2002), 211 F.Supp.2d 992, 1002.[2]

{¶ 18} The alleged circumstances in the case at bar are more serious than those discussed in *Gliatta*.[3] To survive summary judgment, the third prong is sufficiently supported by evidence. The employee testified that she left the job on the Monday morning after the alleged harasser had solicited sex for money from her because she was physically afraid of him, in part because he was a large man. The employee also testified that she had a conflict because the alleged harasser was assigned to train her, but she did not want to have to interact with him because of her fear and her dislike of his sexually related comments. Whether her fear was reasonable is an issue of material fact. "In sum, the focus of the objective/subjective inquiry should remain on (1) whether a reasonable person would find the environment objectively hostile, and (2) whether the plaintiff subjectively found the conduct 'severe or pervasive.'" *Williams v. Gen. Motors Corp.* (C.A.6, 1999), 187 F.3d 553, 568. An issue of material fact exists concerning whether a reasonable person would have found being called a prostitute and offered money for sex from a co-worker created a hostile work environment, especially when the co-worker was a large man assigned to train her and he repeated his proposition after she rejected it.

{¶ 19} The employee also testified that she had suffered nightmares, eating disorders, and posttraumatic stress disorder. The second prong of the test requires that the employee subjectively find the conduct severe or pervasive. Alleging these symptoms sufficiently supports this prong of the test. We find that the employee presented adequate evidence concerning the effect of the harassment on her work to create an issue of material fact for a jury.

{¶ 20} The final prong of the hostile-work-environment test, whether the employer knew or should have known of the harassment and failed to take immediate and appropriate action, is also an issue of fact. It is clear the employee reported the harassment. The employer, moreover, took no action,

---

**2.** It has long been held by the Ohio Supreme Court that "federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000(e) et seq., Title 42, U.S.Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112. *State ex rel. Republic Steel Corp. v. Ohio Civil Rights Comm.* (1975), 44 Ohio St.2d 178, 73 O.O.2d 478, 339 N.E.2d 658; *Weiner v. Cuyahoga Community College District* (1969), 19 Ohio St.2d 35, 48 O.O.2d 48, 249 N.E.2d 907. Cf. *Youngblood v. Dalzell* (1973), 6 EPD para. 8719, 1973 WL 170 (S.D.Ohio, W.D.)." *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.* (1981), 66 Ohio St.2d 192, 196, 20 O.O.3d 200, 421 N.E.2d 128.

**3.** But see, e.g., *Powers v. Ferro Corp.*, Cuyahoga App. No. 79383, 2002-Ohio-2612, 2002 WL 1041850, ¶ 50 (holding that asking the employee to lunch twice, alluding to her breasts while pretending to look at something else, and showing her a questionnaire after she asked what he was looking at were not sufficient to support a claim of sexual harassment).

such as relocating her work in order to have time to investigate her claims. Rather, the employer fired the employee immediately after she complained about the harassment. According to the employee's testimony, moreover, beyond a short telephone conversation that the employee initiated, the employer did not interview her concerning the alleged harassment. Rather, according to the manager's deposition, the employer questioned only the alleged harasser and a co-worker who had been in the car with him.

{¶ 21} The deposition of a co-worker who alleged she also received harassment from the alleged harasser, however, provides clear evidence that the co-worker had complained to the manager at least six months before the employee in this case was hired. The co-worker testified that twice she complained about the alleged harasser's actions and reported her complaints before the employee in the case at bar was hired. In fact, the co-worker testified that the management team held a meeting to discuss the problem of the alleged harasser's behavior. She also testified that once after she complained, the manager called the alleged harasser into his office for a meeting. At the end of the meeting, she testified, the two men came out of the manager's office laughing while the manager had his hand on the alleged harasser's back. This co-worker testified that she did not bother to complain after that incident because she believed it would be pointless. The testimony of the co-worker sufficiently challenges the argument that the employer lacked notice of the alleged harasser's behavior.

{¶ 22} Because the alleged harasser in the case at bar was not a supervisor, however, unless the employee can show that the employer knew or should have known about the abuse occurring in the workplace, she cannot prevail on her claim. The courts have interpreted the "should have known" standard in cases of co-worker harassment: "the employer can be liable only if its response manifests indifference or unreasonableness in light of the facts the employer knew or should have known. The act of discrimination by the employer in such a case is not the harassment, but rather the inappropriate response to the charges of harassment." *Blankenship v. Parke Care Ctrs.* (1997), 123 F.3d 868, 873. The employer would be liable, therefore, if it failed to take remedial action. Id., citing *Spicer v. Virginia Dept. of Corr.* (C.A.4, 1995), 66 F.3d 705, 710. The employer has not shown that it took any remedial action following this report of harassment. By discharging the employee, the employer could be said to have manifested, at the very least, indifference to the alleged harassment, especially in light of the complaints it had received about the alleged harasser's similar conduct toward a co-worker earlier in the year.

{¶ 23} The employer argues that the first report the employee made concerning the harassment the weekend she called her supervisor failed to give any opportunity to correct the problem. It claims ignorance of the problem prior to

her complaint. The employer's receipt of the co-worker's complaints against the alleged harasser contradicts this claim. Even if the employer was not aware of the harassment of this particular employee, the co-worker's allegation that the alleged harasser had engaged in harassing behavior before with her would make this another issue of material fact for the jury. Additionally, the employee testified that she was afraid of the alleged offender, that his desk was right outside the desk of the company attorney's office, and that the attorney and the alleged offender were good friends. She stated she did not feel, therefore, that she could turn to the attorney for protection. Moreover, she was scheduled to work the late shift with only herself and the alleged offender on site that evening. Because of those circumstances, she alleges, she felt no other option but to leave, since the manager upon whom she was relying for help was not in the office and had not addressed the situation.

{¶ 24} The employee has established all the prongs necessary to create a genuine issue of material fact concerning the existence of a hostile work environment. Accordingly, the trial court erred in granting summary judgment, and the first assignment has merit.

{¶ 25} For her second assignment of error, the employee states:

II. The trial court erred in granting defendant-appellant's motion for summary judgment where there remained genuine issues on [sic] fact as to whether plaintiff-appellant was fired in retaliation for making sexual harassment claims.

{¶ 26} The employee also claims that she was fired in retaliation for complaining about the sexual harassment. To support a claim of retaliatory discharge, the employee must prove three elements: that she had engaged in a protected activity, that she suffered an adverse employment action; and that there was a causal relationship between the protected activity and the adverse action. *Powers v. Ferro Corp.*, Cuyahoga App. No. 79383, 2002-Ohio-2612, ¶ 55.

{¶ 27} It is axiomatic that complaining to the employer about sexual harassment is a protected activity. "An individual is protected if she opposes a discriminatory employment action or has made a charge, testified, assisted or participated in any investigation, proceeding, or hearing concerning discriminatory employment practices." *Gliatta*, 211 F.Supp.2d at 1003. See, also, *Brentlinger v. Highlights for Children* (2001), 142 Ohio App.3d 25, 37, 753 N.E.2d 937 ("The protected activity appellant engaged in was the lodging of the complaint * * *"). The employee has, therefore, satisfied the first prong.

{¶ 28} The second prong of the test for retaliatory discharge requires that the employee suffer an adverse employment action. "It is undisputed that ultimate employment actions such as termination are considered adverse employ-

ment actions for the purposes of Title VII retaliation claims." *Gliatta,* 211 F.Supp.2d at 1003, citing *Mattern v. Eastman Kodak Co.* (C.A.5 1997), 104 F.3d 702, 705. Because she was terminated, the employee has, therefore, satisfied the second prong of the test.

{¶ 29} The third prong of the test requires the employee to show that there was a causal relationship between her termination and her protected activity. By demonstrating the temporal relationship between her discharge and her complaints about the sexual harassment, the employee established her prima facie case that she was discharged in retaliation for complaining. "A causal link may be proven through evidence that an adverse employment action came right after the employee engaged in a protected activity." *Gliatta,* 211 F.Supp.2d at 1004. The employee was fired within two days of her complaining about the alleged harasser's offensive actions. She has, therefore, met her burden of demonstrating a causal link and has established a prima facie case of retaliatory discharge.

{¶ 30} Once the employee has established a prima facie case, the burden then shifts to the employer:

> Once a prima facie case has been established, the burden is shifted to the defendant to articulate a legitimate, non-discriminatory reason for the adverse action, and if the defendant meets that burden, the plaintiff must demonstrate that the articulated reason is merely a pretext. *Chandler v. Empire Chem., Inc., Midwest Rubber Custom Mixing Div.* (1994), 99 Ohio App.3d 396, 402, 650 N.E.2d 950, appeal not allowed (1995), 72 Ohio St.3d 1415, 647 N.E.2d 1390.

*Varner v. Goodyear,* Summit App. No. 21901, 2004-Ohio-4946, 2004 WL 2244491, ¶ 11–12.

{¶ 31} In the case at bar, the employer argues that the employee's discharge was not retaliatory, because the employee was still on probation at the time she was discharged. It claims that she was fired, not for complaining about the sexual harassment, but for violating the terms of her probationary period. In its summary judgment motion, the employer attached a copy of an employment manual, which states: "The probationary period may be ended at any time during the first ninety (90) days without prior notice or utilizing the corrective action steps when it has been determined that attendance, cooperation and/or perform-ance standards *cannot* be met." (Emphasis added.)

{¶ 32} The employer's only argument to support its claim that the discharge was not in violation of company policy, however, is that the employee left the job once without permission. The employer makes no argument claiming that, aside from the one isolated incident, the employee's attendance, job performance, or cooperation did not meet company standards. One incident of the employee's

leaving, arguably for a valid reason, does not necessarily show that she could not meet the requirements stated in the manual. Whether her articulated reason was valid is a question of fact for the jury.

{¶ 33} The employee's testimony does not show, moreover, that she was aware of any terms of her probationary period. In fact, she testified that she was not aware she was even on probation. Even if there were clear evidence that the employee was on probation, there is still the question of whether the company's explanation is a pretext, given the company's inaction in response to her complaint in contrast to its swift decision to fire her.

{¶ 34} If the employer's reason for discharging the employee is deemed legitimate, the burden then shifts back to the employee to demonstrate that the employer's reason was pretextual. To show that the employer's proffered reason was pretextual, the employee is required to prove by a preponderance of the evidence one of the following: that the proffered reason had no basis in fact, or that the proffered reason was not what actually motivated the discharge, or that the proffered reasons were not sufficient to motivate the discharge. *Williams v. Gen. Elec. Co.* (2003), 269 F.Supp.2d 958, 967–968, citing *Manzer v. Diamond Shamrock Chem. Co.* (C.A.6 1994), 29 F.3d 1078, 1084, quoting *McNabola v. Chicago Transit Auth.* (C.A.7 1993), 10 F.3d 501, 513.

{¶ 35} The employer's stated reason for firing the employee was her action in suddenly leaving the job on the Monday after she complained verbally to the manager. The employee does not deny that she left the job suddenly on that Monday. The first prong, therefore, cannot apply. She alleges, rather, that this proffered reason was not what actually motivated the discharge.

{¶ 36} To support her claim that the employer's reason was merely a pretext, the employee points out that she was never interviewed as a part of the employer's inquiry into her complaints. There was simply a brief telephone call that she initiated. Nor did the employer take any precautionary interim steps. If the employee's complaint had been the first involving this alleged harasser, the employer's claimed reason for her discharge would be more credible. There is no evidence, however, to show that the employer took any corrective or disciplinary action against the alleged offender after this complaint, which was at least the third complaint against him in less than nine months.

{¶ 37} Even if the employee's leaving the job was part of the employer's motivation for her discharge, there is still the question of the company's inaction. The evidence provides enough questions to show that issues of material fact exist concerning whether the employee's discharge was discriminatory and, indeed, retaliatory.

{¶ 38} The trial court erred in granting summary judgment on this issue. Accordingly, this assignment of error has merit.

{¶ 39} For her third assignment of error, the employee states:

III.  The trial court erred in granting defendant-appellee's motion for summary judgment where there remained genuine issues of fact as to whether defendant-appellees were negligent in continuing to employ the individual accused by plaintiff-appellant of sexual harassment.

{¶ 40} The employee claims that the employer had sufficient notice of the alleged harasser's illegal behavior to make it responsible for negligently retaining him.

The elements of negligent retention are: 1) an employment relationship; 2) incompetence of the employee; 3) actual or constructive knowledge of the incompetence by the employer; 4) an act or omission by the employee which caused the plaintiff's injuries; and 5) negligent retention of the employee by the employer, which action is the proximate cause of the plaintiff's injuries.

*Mills v. Deehr*, Cuyahoga App. No. 82799, 2004-Ohio-2338, 2004 WL 1047720, at ¶ 13, citing *Steppe v. Kmart* (1999), 136 Ohio App.3d 454, 465, 737 N.E.2d 58.

{¶ 41} It is undisputed that the alleged harasser was an employee of the employer.  Thus the first prong of the test for negligent retention, that an employment relationship exists between the employer and the alleged harasser, is satisfied.

{¶ 42} The second prong of the test requires incompetence on the part of the offending employee:

[F]or purposes of the second element of the negligent supervision and retention test, we find that sexually harassing behavior is per se incompetent behavior, based on our reading of *Kerans* [*v. Porter Paint Company* (1991), 61 Ohio St.3d 486, 575 N.E.2d 428] and *Myers*.  In this context, incompetence relates not only or exclusively to an employee's lack of ability to perform the tasks that his or her job involves.  It also relates to behavior while on the job inapposite to the tasks that a job involves and which materially inhibits other employees from performing their assigned job tasks.  Sexually harassing behavior is within that definition.

*Harmon v. GZK, Inc.* (Feb. 8, 2002), Montgomery App. No. 18672, 2002 WL 191598, at *46.  The employee has presented sufficient evidence to create an issue of material fact concerning the alleged sexual harassment and therefore the alleged incompetence.  She has satisfied the second prong of the test.

{¶ 43} The third prong of the test is actual or constructive knowledge of the abuse on the part of the employer.  The deposition of the co-worker who

testified that she had complained to the employer concerning the alleged harasser's offensive conduct twice before the harassment alleged in the case at bar satisfies the third prong of the test, that the employer had prior knowledge of the alleged harasser's illegal behavior. Because the employee in the case at bar alleges that she presented evidence to support this prong, there is a question whether the employer can claim ignorance of the problem presented by the alleged harasser.

{¶ 44} The fourth prong of the test requires an act by the alleged harasser that caused the plaintiff's injuries. The employee's testimony provides sufficient evidence to create an issue of material fact concerning whether the alleged offender's conduct caused her injury. She described nightmares, loss of appetite, a sudden inability to relate to men, and daily crying jags to support her allegation of injury. This prong of the test is, therefore, satisfied for the purposes of summary judgment.

{¶ 45} The fifth prong of the test requires negligent retention of the alleged harasser "by the employer, which action is the proximate cause of the plaintiff's injuries." *Mills,* 2004-Ohio-2338, at ¶ 13. If the employer had prior knowledge of the alleged harasser's incompetence, that is, his subjecting fellow employees to sexual harassment, and despite this knowledge failed to intervene to prevent a recurrence of the behavior in the workplace, then the employer would be guilty of negligent retention. The deposition of the co-worker who complained about the sexual harassment but gave up raising the issue because of the employer's indifferent response provides sufficient evidence to raise an issue of material fact on the issue of negligent retention to preclude summary judgment on this issue.

{¶ 46} Accordingly, the trial court erred in granting summary judgment on the issue of negligent harassment. This assignment of error has merit.

{¶ 47} The judgment is reversed, and the cause is remanded for proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

DYKE, P.J., concurs.

CALABRESE, J., dissents.

ANTHONY O. CALABRESE JR., Judge, dissenting.

{¶ 48} I respectfully dissent from the majority's decision to reverse and remand this case for the following reasons.

{¶ 49} As to the employee's claim of sexual harassment, I would find that while the alleged harasser's comments were rude and unprofessional, to say the least, as a matter of law, they were neither severe nor pervasive. Not all workplace conduct having sexual connotations can be classified as actionable sexual harassment. See *Harris v. Forklift Sys., Inc.* (1993), 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295; *Meritor Sav. Bank v. Vinson* (1986), 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49. Furthermore, we have held that sexual harassment laws were not intended to create sterile workplaces, completely void of vulgarity. *Vitatoe v. Lawrence Industries, Inc.*, 153 Ohio App.3d 609, 616, 2003-Ohio-4187, 795 N.E.2d 125. In comparing the alleged harasser's conduct with other factual situations from similar cases, I believe that the employee failed to prove that the conduct was severe or pervasive enough to affect the terms, conditions, or privileges of her employment.

{¶ 50} As to the employee's claim of retaliation, I would find that *Clark Cty. School Dist. v. Breeden* (2001), 532 U.S. 268, 121 S.Ct. 1508, 149 L.Ed.2d 509, applies to the case at bar. *Breeden* held that mere temporal proximity between an employer's knowledge of a protected activity and an adverse employment action is sufficient to establish a prima facie case. Id. at 273, 121 S.Ct. 1508, 149 L.Ed.2d 509. However, this evidence alone does not seem to be enough to overcome the burden-shifting required to survive a summary judgment motion. The employee put forth no other evidence of causation, and accordingly, she did not meet her final burden of production in order to submit her retaliatory-discharge claim to a trier of fact.

{¶ 51} As to the employee's claim of negligent retention, I would find that because the conduct in question was not severe or pervasive sexual harassment as a matter of law, this claim cannot now be the basis underlying a negligent-retention claim. See *Myers v. Goodwill Industries of Akron, Inc.* (1998), 130 Ohio App.3d 722, 721 N.E.2d 130.

{¶ 52} I would affirm the trial court's granting summary judgment to the employer on the employee's claims of sexual harassment, retaliatory discharge, and negligent retention, because as a matter of law, the employee's evidence is insufficient to establish her claims.