JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Appellant Christina Johnson appeals the trial court's decision to grant the motions for summary judgment filed by appellees Olmsted Township ("the township"), Olmsted Township Board of Trustees ("the board"), and William Davis (collectively "appellees"). After a thorough review of the arguments, and for the reasons set forth below, we affirm in part, and reverse and remand in part.
 {¶ 2} On December 15, 2004, Johnson, an employee of the township's police department, was terminated after she was found passed out and intoxicated in a stranger's car in a church parking lot on December 4, 2004. She had been wearing her uniform sweater, which bore the police department's insignia. As a result of a police report that a woman had crawled into a person's car and passed out, an Olmsted Falls police officer found her.
 {¶ 3} Davis, the township police chief, began an investigation. The chief met with Johnson, who admitted that she had been drinking and could not remember anything else from that evening. Davis presented his findings to the board, which recommended that Johnson resign. On December 7, 2004, Johnson agreed to resign, but on the following day, she changed her mind. Instead, she asserted sexual harassment allegations against Davis.
 {¶ 4} The board began an investigation into the alleged sexual harassment and determined that there had been two isolated improper incidents between Davis and Johnson. One incident involved a pornographic magazine that Davis had shown *Page 4 
Johnson four months prior to her termination. The other incident, occurred a few weeks before Johnson's termination and involved Davis' comment to another member of the department that he probably could not "put [his] legs behind [his] head the way [Johnson] can." The investigation revealed that a third incident regarding the transport of a prisoner was not inappropriate. Ultimately, Davis received two reprimands on January 19, 2005.
 {¶ 5} The board informed Johnson on December 13, 2004 that there would be a hearing regarding her alleged violation of two of the police department's standards of conduct. On December 15, 2004, Johnson attended the meeting with legal counsel. She admitted that she had been drinking and that she could not remember any other events from that evening. The board determined that her actions negatively impacted the police department's public image and terminated her employment.
 {¶ 6} On December 27, 2004, Johnson filed a notice of appeal and a request for hearing in the common pleas court regarding the board's determination to fire her ("the administrative case"). On April 22, 2005, Johnson filed a civil complaint alleging sex discrimination, retaliation, and a violation of R.C. 505.49 et seq. ("the discrimination case"). On May 17, 2005, Johnson filed a motion in the administrative case for an order reinstating her employment. On June 3, 2005, the township and the board filed a brief in opposition to the motion. On July 18, 2005, the trial court granted Johnson's motion to consolidate the two cases. *Page 5 
 {¶ 7} On July 14, 2006, appellees filed motions for summary judgment in the discrimination case. On August 14, 2006 Johnson filed her brief in opposition. The trial court issued two rulings on November 28, 2006. It upheld Johnson's termination in the administrative case, and granted appellees' motions for summary judgment in the discrimination case. On December 22, 2006, Johnson filed her appeal.
 {¶ 8} The facts that gave rise to this appeal began when Johnson was hired by the police department as a part-time dispatcher in May 2003. On October 22, 2003, Johnson signed an acknowledgment that she had read the police department's sexual harassment policy.[1] She also received the police department's standards of conduct.[2] Violation of the standards of conduct can result in "termination if public image is severely damaged [or] progressive discipline up to and including termination for other situations." A violation of the alcohol standard may *Page 6 
result in "termination if serious damage to property or public image or personal injury or serious safety violations are the consequence of violation of this standard."
 {¶ 9} Appellant brings this appeal and assigns four assignments of error for our review. All of appellant's assignments of error involve the trial court's grant of summary judgment in favor of appellees.
 {¶ 10} "Civ.R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317,327, 364 N.E.2d 267.
 {¶ 11} It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. Celotex Corp. v. Catrett (1987), 477 U.S. 317, 330,106 S.Ct. 2548, 91 L.Ed. 2d 265; Mitseff v. Wheeler (1988), 38 Ohio St.3d 112,115, 526 N.E.2d 798. Doubts must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356, 604 N.E.2d 138.
 {¶ 12} In Dresher v. Burt, 75 Ohio St.3d 280, 1996-Ohio-107,662 N.E.2d 264, the Ohio Supreme Court modified and/or clarified the summary judgment standard *Page 7 
as applied in Wing v. Anchor Media, Ltd. of Texas (1991),59 Ohio St.3d 108, 570 N.E.2d 1095. Under Dresher, "* * * the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstratethe absence of a genuine issue of fact or material element of thenonmoving party's claim." Id. at 296. (Emphasis in original.) The nonmoving party has a reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293. The nonmoving party must set forth "specific facts" by the means listed in Civ.R. 56(C) showing a genuine issue for trial exists. Id.
 {¶ 13} This court reviews the lower court's granting of summary judgment de novo. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 622 N.E.2d 1153. An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ.R. 56(C). "The reviewing court evaluates the record * * * in a light most favorable to the nonmoving party * * *. [T]he motion must be overruled if reasonable minds could find for the party opposing the motion." Saunders v.McFaul (1990), 71 Ohio App.3d 46, 50, 593 N.E.2d 24; Link v. LeadworksCorp. (1992), 79 Ohio App.3d 735, 741, 607 N.E.2d 1140.
 Sex Discrimination {¶ 14} "I. The trial court erred in granting summary judgment for the defendants because Olmsted Township and Chief Davis discriminated against Christina Johnson on the basis of sex in violation of Ohio Revised Code 4112.02." *Page 8 
 {¶ 15} Appellant argues that the trial court erred in granting summary judgment in favor of appellees. More specifically, she argues that they discriminated against her based on her sex. We find that genuine issues of material fact remain regarding appellant's sex discrimination claim.
 {¶ 16} Under R.C. 4112.02(A), it is "an unlawful, discriminatory practice for any employer, because of the race, color, religion, sex, national origin, handicap, age or ancestry of any person to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions or privileges of employment, or any matter directly or indirectly related to employment."
 {¶ 17} In Byrnes v. LCI Communication Holdings Co. (1996),77 Ohio St.3d 125, 128-129, 672 N.E.2d 145, the Ohio Supreme Court stated that "discriminatory intent may be established indirectly by the four[-]part analysis set forth in Barker v. Scovill, Inc. (1983), 6 Ohio St.3d 146,451 N.E.2d 807, adopted from the standards established in McDonnellDouglas Corp. v. Green (1973), 411 U.S. 792, 93 S.Ct. 1817,36 L.Ed.2d 668. The Barker analysis requires that the plaintiff-employee demonstrate `(1) that he was a member of the statutorily-protected class, (2) that he was discharged, (3) that he was qualified for the position, and (4) that he was replaced by, or that his discharge permitted the retention of a person not belonging to the protected class.'" A plaintiff can also make a prima facie case by showing, in addition to the first three elements, that "a comparable non-protected person was treated better." Mitchell v. Toledo Hosp. (C.A.6, 1992), 964 F.2d 577, 582. *Page 9 
 {¶ 18} After establishing a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for its action. McDonnell Douglas Corp., 411 U.S. at 802. If the defendant articulates such a reason, any inference of intentional discrimination drops from the case, and the burden shifts back to the plaintiff to offer "specific proofs and rebuttals" showing that discriminatory animus motivated the defendant's decision to terminate employment. St. Mary's Honor Ctr v. Hicks (1993), 509 U.S. 502, 507,113 S.Ct. 2742, 125 L.Ed.2d 407. Essentially, the plaintiff must provide evidence that the defendant's proffered reason was pretextual.
 {¶ 19} Discriminatory intent may also be established by direct evidence of discrimination, "which is evidence other than the four-part demonstration of Barker." Kahmesher v. Kroger Co. (1991),61 Ohio St.3d 501, 575 N.E.2d 439. A plaintiff may establish a prima facie case by presenting evidence, of any nature, to show that an employer more likely than not was motivated by discriminatory intent. Mauzy,75 Ohio St.3d 578, 664 N.E.2d 1272, paragraph one of syllabus. Barker, supra, at 129.
 {¶ 20} Here, Johnson has not presented any direct evidence of discrimination; therefore, she must establish a prima facie case of sexual discrimination in order to shift the burden of production to appellees. It is undisputed that Johnson is a member of the statutorily protected class (a woman); that she was discharged; and that she was qualified for her position. The only element in dispute is whether there was a comparable non-protected person who was treated better. *Page 10 
 {¶ 21} Johnson argues that there were several comparable, non-protected employees treated better than she. More specifically, she contends that several male co-workers, including Greg Stoyka, Officer Gary Wilson, and Sergeant Matt Vanyo, were not terminated after being involved in alcohol-related incidents. We find that this argument has merit and creates genuine issues of material fact for a jury to consider.
 {¶ 22} Appellant raises several situations that involved the behavior of male employees while consuming alcohol. While appellees argue that those situations are factually distinguishable from this case, and that there was only minimal evidence in each of those cases, we find that the evidence that does exist creates issues of material fact as to whether male employees were treated more favorably than Johnson.
 {¶ 23} Service department employee Greg Stoyka received only a one-day suspension for a situation that involved drinking while driving a city vehicle and damage to city property. Board trustee Martin Strelau testified that he received phone calls about Stoyka and had to send the police to investigate. One phone call revealed that Stoyka had been drinking and sleeping in the service department. According to Strelau, there was a six-month period where there were ongoing problems with Stoyka.
 {¶ 24} Officer Gary Wilson went out drinking one evening after being allowed to leave work early to go home because of back problems. In 2005, there was *Page 11 
evidence that Wilson was under the influence of alcohol while he drove a vehicle that contained weapons in its trunk. Allegedly, he crashed that car into a tree and abandoned it in the Metroparks. Ultimately, the board determined that there was no offense committed.
 {¶ 25} Finally, an important fact regarding Sgt. Vanyo's behavior that might be relevant is that, despite the fact that he was out drinking with Johnson on the night of the incident, he received only a reprimand.
 {¶ 26} While appellees argue that Stoyka, Wilson, and Vanyo were not similarly situated to Johnson, and that their alleged conduct was not as egregious as Johnson's, we find that those questions show a factual dispute that should be submitted to a jury.
 {¶ 27} Because Johnson has made a prima facie case of discrimination, appellees must offer a legitimate nondiscriminatory reason for her termination. According to appellees, she was fired because she violated the department's standards. The burden next shifts to Johnson to show pretext.
 {¶ 28} There are three ways for her to show that the reasons for her termination were pretextual: (1) by demonstrating that appellees' proffered reason is false; (2) by illustrating that the proffered reasons did not motivate the discharge, but that an illegal motivation did; or (3) by showing that the proffered reasons were insufficient to warrant termination. Manzer v. Diamond Shamrock Chem. Co. (C.A.6, 1994),29 F.3d 1078, 1084. *Page 12 
 {¶ 29} We find that genuine issues of material fact remain as to the reasons for Johnson's termination. Here, there was no personal injury or property damage. Even if the proffered reasons are true in this case, there is evidence that those reasons did not motivate the discharge (that it is pretextual) because there were male employees who also committed similar indiscretions who were not terminated. Accordingly, appellant's first assignment of error is sustained.
 Hostile Work Environment {¶ 30} "II. The trial court erred in granting summary judgment for the defendants because Olmsted Township and Chief Davis discriminated against plaintiff by creating and tolerating a hostile work environment."
 {¶ 31} Johnson argues that the trial court erred when it granted summary judgment in favor of appellees on her hostile work environment claim. More specifically, she argues that the incidents where Davis acted inappropriately rise to the level of severe or pervasive. We find that genuine issues of material fact remain regarding appellant's sex hostile work environment claim.
 {¶ 32} Four elements must be met in order to establish a prima facie case for hostile environment sexual harassment, including: "(1) that the harassment was unwelcome, (2) that the harassment was based on sex, (3) that the harassing conduct was sufficiently severe or pervasive to affect the `terms, conditions, or privileges of employment or any matter directly, or indirectly related to employment,' and (4) that either (a) the harassment was committed by a supervisor, or (b) the *Page 13 
employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action." Hampel v. Food Ingredient Specialities,Inc. (2000), 89 Ohio St.3d 169,177, 729 N.E.2d 726.
 {¶ 33} Not all conduct in the employment context that can be construed as having sexual connotations can be classified as harassment in violation of the statute. Meritor Savings Bank v. Vinson (1986),477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49. The conduct at issue must be severe or pervasive enough to create an environment that is abusive or hostile on a subjective basis by the individual, as well as abusive or hostile by a reasonable person. Harris v. Forklift Systems, Inc. (1993),510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295. Therefore, conduct that is offensive, but is not severe or pervasive under the subjective and objective standard is not actionable. Id.
 {¶ 34} The court must examine the circumstances surrounding the conduct and must consider them within the framework of several factors to determine if the conduct is actionable. These factors include the conduct's frequency; the conduct's severity; whether the conduct is physically threatening or humiliating; and whether the conduct unreasonably interferes with the victim's work performance.Powers, supra.
 {¶ 35} It is not disputed that Johnson is a member of the protected class, was subject to unwelcome sexual harassment, and that the harassment was carried out *Page 14 
by a supervisor. The only issue is whether the conduct was severe or pervasive enough to affect the terms, conditions, or privileges of employment to meet the elements of a prima facie case. We find that the existence of the two separate incidents creates genuine issues of material fact as to whether Davis' conduct rises to the level of severe or pervasive.
 {¶ 36} Johnson relies on two incidents, which included the pornographic magazine and a comment about her ability to put her leg behind her head. The first incident occurred four months before Johnson's termination, and the second incident took place three months later. "A single act of sexual harassment may be sufficient to create a hostile work environment if it is such a nature and occurs in such circumstances that it may reasonably be said to characterize the atmosphere in which a plaintiff must work." Payton v. ReceivablesOutsourcing, Inc., Cuyahoga App. No. 85182, 2005-Ohio-4978.
 {¶ 37} Davis subjected Johnson to the pornographic magazine in the company of other male officers. The episode a few months later where Davis commented on his perception of Johnson's agility was also made in the presence of male coworkers. The presence of male coworkers makes Davis' act humiliating, which can be considered severe. As a result, we find that summary judgment should not have been granted because reasonable minds could have found that Davis' conduct was severe; therefore, genuine issues of material fact remain. Accordingly, appellant's second assignment of error is sustained. *Page 15 
 Retaliation {¶ 38} "III. The trial court erred in granting summary judgment for the defendants because Olmsted Township and Chief Davis retaliated against plaintiff Christina Johnson in violation of Ohio Revised Code 4112.02(I)."
 {¶ 39} Johnson argues that the trial court erred in granting summary judgment in favor of appellees regarding her retaliation claim. More specifically, she alleges that she was fired in retaliation for alleging that Davis sexually harassed her. We find that genuine issues of material fact remain regarding appellant's retaliation claim.
 {¶ 40} In order to prove a claim of retaliation, Johnson must establish three elements: that she engaged in a protected activity; that she was subjected to an adverse employment action; and that a causal link exists between the protected activity and the adverse action.Peterson v. Buckeye Steel Casings (June 8, 1999), 10th Dist. App. No. 98AP-685.
 {¶ 41} Once an employee successfully establishes a prima facie case, it is the employer's burden to articulate a legitimate reason for its action. Id. If the employer meets its burden, the burden shifts back to the employee to show that the articulated reason was a pretext. Id.
 {¶ 42} We find that summary judgment was inappropriate because genuine issues of material fact remain regarding whether appellees retaliated against Johnson. Here, Johnson was engaged in a protected activity (alleging a claim of *Page 16 
harassment/discrimination) and was subject to an adverse employment action (termination). There is some dispute as to whether a causal relationship existed between her allegations and termination. Johnson argues that she was fired after making her allegations. Appellees argue that she was essentially going to be fired before she made her allegations, but that the board asked for her resignation instead. We find that this creates a factual dispute for the jury to consider. Accordingly, appellant's third assignment of error is sustained.
 Due Process {¶ 43} "IV. The trial court erred in granting summary judgment for the defendants because the defendants failed to comply with due process requirements specified in Revised Code 505.01, et seq. and plaintiff's termination was arbitrary, capricious, unreasonable and contrary to law."
 {¶ 44} Appellant argues that the trial court erred when it granted summary judgment in favor of appellees because they failed to comply with the due process requirements under R.C. 505.01, et seq. More specifically, she argues that, as a police dispatcher, she is entitled to the protections of R.C. 505.01, et seq. This argument is without merit.
 {¶ 45} Johnson does not qualify for the protections under R.C. 505.49
because she is not a sworn peace officer. Under R.C. 505.49, "a patrol officer, other police district employee, or police constable, who has been awarded a certificate attesting to the satisfactory completion of an approved state, county, or municipal police basic *Page 17 
training program, as required by section 109.77 of the Revised Code, may be removed or suspended only under the conditions and by the procedures in sections 505.491 to 505.495 of the Revised Code. Any other patrol officer, police district employee, or police constable shall serve at the pleasure of the township trustees
 {¶ 46} This statute applies only to employees who are required, under R.C. 109.77 to have completed a police basic training program. Under R.C. 109.77(B)(1), "no person shall receive an original appointment on a permanent basis as any of the following unless the person previously has been awarded a certificate by the executive director of the Ohio peace officer training commission attesting to the person's satisfactory completion of an approved state, county, municipal, or department of natural resources peace officer basic training program: (a) a peace officer of any county, township, municipal corporation, regional transit authority, or metropolitan housing authority * * *."
 {¶ 47} Under R.C. 109.77, only peace officers are required to have training. There is a three-part test to determine if a person is a peace officer, required to be certified under R.C. 109.77. A person must be appointed to a specific position under R.C. 109.71; or one of Ohio's political subdivisions must commission or employ the individual as a peace officer; or the individual's primary duties must be to preserve the peace, protect both life and property, and enforce laws, ordinances and/or regulations. Dektas v. Leis (Dec. 27, 1989), Hamilton App. No. C-880429. *Page 18 
 {¶ 48} Johnson is clearly not a peace officer. In her position as dispatcher, she is responsible for dispatching police, fire, and EMS units; monitoring calls; operating the computer; and maintaining the activity logs. Peace officers respond to emergency calls, arrest people, investigate complaints, and issue traffic citations. Because she is not a peace officer, she is not entitled to the protections under R.C.505.49.
 {¶ 49} In Cleveland Bd. of Educ. v. Loudermill (1985), 470 U.S. 532,545-46, 105 S.Ct. 1487, 84 L.Ed.2d 494, the court held that the constitutional minimum requirements for due process in public employment termination include: (1) notice of the basis for removal; (2) an explanation of evidence; and (3) an opportunity to be heard. Johnson received these procedural protections. She received notice of the board's meeting and attended that meeting with counsel. The charges were explained to her, and she was given the time to respond. The board determined that termination was appropriate. Accordingly, appellant's fourth assignment of error is overruled.
 {¶ 50} Judgment is affirmed in part, reversed in part and remanded to the lower court for further proceedings consistent with this opinion.
It is ordered that appellant and appellees share the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. *Page 19 
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., ADMINISTRATIVE JUDGE
KENNETH A. ROCCO, J., and MARY EILEEN KILBANE, J., CONCUR
[1] Under the sexual harassment policy, "any employee who believes he or she has been subject to sexual harassment by a supervisor, coworker, visitor, or other person in the [police department] must bring the problem to the attention of the employer for formal review. * * *"
[2] Under standards of conduct, in the section entitled, Affirmatively Promoting a Positive Public Image, "members shall conduct themselves on duty and off duty in a way that does not damage or have the probable expectations (in the mind of a reasonable and prudent member) of damaging the organization's public image, integrity or reputation. * * *"
Under the standards of conduct, in the section entitled, Alcohol Use and Related Conduct, "members shall not possess or consume alcoholic beverages on duty or while in uniform on duty or off duty. * * *" *Page 1